Stephen **BLUMENTHAL** and Les Fein,
Plaintiffs–Appellants,

v.

**MERRILL LYNCH, PIERCE, FENNER
& SMITH, INC.,** Defendant–Appellee.

No. 894, Docket 89–9010.

United States Court of Appeals,
Second Circuit.

Argued Feb. 28, 1990.

Decided Aug. 8, 1990.

Thomas J. Kavaler, New York City (Thomas M. Campbell, Phillip C. Essig, Robert J. Rubinson, Cahill Gordon & Reindel, New York City, of counsel), for plaintiffs-appellants.

Thomas T. Loder, Paoli, Pa. (Gregory S. Rubin, Marsha L. Levick, Rubin & Associates, Paoli, Pa., of counsel), for defendant-appellee.

Before OAKES, Chief Judge,
WALKER, Circuit Judge, and
BILLINGS, District Judge.*

WALKER, Circuit Judge:

Plaintiffs Stephen Blumenthal and Les Fein appeal from a judgment of the United States District Court for the Southern District of New York (John F. Keenan, Judge) denying their motion to recover damages for a wrongful injunction and to forfeit the bond posted by defendant Merrill Lynch, Pierce, Fenner & Smith, Inc. (Merrill Lynch). We hold that the district court had jurisdiction to enjoin plaintiffs pending arbitration, but that when the arbitrators dissolved the injunction, it was rendered "wrongful" thereby permitting plaintiffs to recover on the bond. Therefore, we reverse and remand to allow plaintiffs to prove any damages, up to the amount of the bond, that resulted from the injunction.

## BACKGROUND

On Friday, February 17, 1989, plaintiffs Blumenthal and Fein, both New York Stock

---

* The Hon. Franklin S. Billings, Jr., Chief Judge of the United States District Court for the District of Vermont, sitting by designation.

Exchange ("NYSE") registered representatives, resigned from Merrill Lynch and joined Prudential–Bache Securities, Inc. Plaintiffs took with them customer lists and other records used to service clients.

The Constitution and Rules of the NYSE mandate arbitration of disputes arising out of the employment or termination of employment of a registered representative with a member firm. *See* NYSE Rule 347; NYSE Constitution, Art. XI, Sec. 1. Additionally, Fein's employment agreement with Merrill Lynch provided for arbitration of the same type of controversy.

Plaintiffs, on the day they resigned, filed for arbitration with the NYSE and informed Merrill Lynch that they were ready to arbitrate the issue of their continued dealings with their clients on the next available business day—Tuesday, February 21. When Merrill Lynch resisted the Tuesday arbitration, plaintiffs commenced an action in the district court under the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–15 (1988), seeking to compel arbitration.[1]

Plaintiffs moved the district court for a declaration of arbitrability of their dispute, including any claim for preliminary injunctive relief, and for an order compelling arbitration before the NYSE on an expedited basis. Merrill Lynch cross-moved for a preliminary injunction prohibiting plaintiffs from soliciting or accepting orders from their pre-existing clients.

On February 23, 1989, the district court ruled the dispute arbitrable and ordered expedited arbitration before the NYSE. But the district court preliminarily enjoined plaintiffs from using Merrill Lynch customer records or soliciting or accepting business from any Merrill Lynch client. The court conditioned the preliminary injunction upon Merrill Lynch's posting a $100,000 bond pursuant to Fed.R.Civ.P. 65(c).

On March 16, 1989, after a two-day arbitration, the NYSE panel, "in full and final settlement" of the matter, terminated the preliminary injunctions in effect against the plaintiffs but awarded Merrill Lynch monetary damages of $80,000 against plaintiff Fein alone. Thereafter, plaintiffs moved in the district court for recovery against the bond for "wrongful injunction," claiming the loss of "substantial commissions and long-time clients" allegedly sustained during the three weeks the injunction was in effect. The district court denied the motion in an order dated September 25, 1989. This appeal followed.

DISCUSSION

Under Fed.R.Civ.P. 65(c), a party subjected to a preliminary injunction in district court who is later found to have been "wrongfully enjoined" may recover against the security bond damages suffered as a result of the injunction. *See, e.g., Edgar v. MITE Corp.,* 457 U.S. 624, 649, 102 S.Ct. 2629, 2644, 73 L.Ed.2d 269 (1982) (Stevens, J., concurring); *Philips Business Systems, Inc. v. Executive Communications Systems, Inc.,* 744 F.2d 287, 290 (2d Cir.1984); *Medafrica Line, S.P.A. v. American West African Freight Conference,* 654 F.Supp. 155, 156 (S.D.N.Y.1987). Plaintiffs assert that the preliminary injunction later vacated by the arbitrators was "wrongful" because (1) the district court was without jurisdiction to enter an injunction pending arbitration and (2) the arbitrators' ultimate disposition rendered the injunction substantively wrongful. We disagree with the first contention but agree with the second.

I.

■ Challenging previous decisions of this court and the weight of federal appellate authority, Blumenthal and Fein assert that the FAA bars a federal district court from issuing a preliminary injunction pending arbitration. They ground their argu-

---

1. The FAA, or at least section 4 thereof providing for an order compelling arbitration, does not by itself confer federal court jurisdiction; an independent jurisdictional basis is required. 9 U.S.C. § 4; *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 25 n. 32, 103 S.Ct. 927, 942 n. 32, 74 L.Ed.2d 765 (1983); *Drexel Burnham Lambert, Inc. v. Valenzuela Bock,* 696 F.Supp. 957, 959–65 (S.D.N.Y.1988). This matter was properly before the district court on the basis of diversity of citizenship. *See* 28 U.S.C. § 1332 & Commentary on 1988 Revision (West.Supp.1990); Complaint ¶¶ 1–3.

ment in the language of the statute and the federal policy favoring arbitration.

Plaintiffs' statutory argument is based on Section 4 of the FAA. That section provides, in pertinent part, that a party seeking to compel arbitration pursuant to a written agreement "may petition any United States district court *which, save for such agreement, would have jurisdiction*" over the subject matter of the case for an order directing that the arbitration proceed according to the agreement (emphasis added).[2] Plaintiffs contend that the words "save for such agreement" operate to divest the district court of jurisdiction over a dispute covered by an arbitration agreement except to order arbitration or to exercise other powers explicitly provided for in the FAA.

Further, citing the "strong federal policy" favoring arbitration, *see Shearson/American Express Inc. v. McMahon*, 482 U.S. 220, 233, 107 S.Ct. 2332, 2341, 96 L.Ed.2d 185 (1987); *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 510–11, 94 S.Ct. 2449, 2452–53, 41 L.Ed.2d 270 (1974), and mandating the speedy removal of arbitrable disputes from the courts, *see Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218, 105 S.Ct. 1238, 1241, 84 L.Ed.2d 158 (1985); *Moses H. Cone Memorial Hosp. v. Mercury Construction Corp.*, 460 U.S. 1, 22, 103 S.Ct. 927, 940, 74 L.Ed.2d 765 (1983); *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404, 87 S.Ct. 1801, 1806, 18 L.Ed.2d 1270 (1967), plaintiffs argue that a district court's injunction pending arbitration abrogates the agreed-upon role of the arbitrators as adjudicators of the dispute. Moreover, plaintiffs argue that the parties here had agreed to submit claims for preliminary injunctive relief to the arbitrators. Finally, they argue that the ability of NYSE arbitration panels to promptly assemble and rule, and to grant preliminary injunctive relief not substantially different from that of a district court,

warrants the fashioning of a "rule of necessity" so that at least in NYSE cases a district court should not have preliminary injunction jurisdiction.

The short answer to these arguments is that they come too late in the day in light of controlling precedent to the contrary. In *Roso–Lino Beverage Distributors, Inc. v. Coca–Cola Bottling Co.*, 749 F.2d 124, 125 (2d Cir.1984) (per curiam), we gave explicit and broad recognition to a district court's power to grant preliminary injunctive relief pending arbitration:

> We reverse the denial of the preliminary injunction because it appears, from the record before us, that the district court believed its decision to refer the dispute to arbitration stripped the court of power to grant injunctive relief. The fact that a dispute is to be arbitrated, however, does not absolve the court of its obligation to consider the merits of a requested preliminary injunction....

749 F.2d at 125. *See also Erving v. Virginia Squires Basketball Club*, 468 F.2d 1064, 1067 (2d Cir.1972) ("in a proper case such as we have here, the only way to preserve the *status quo* during the pendency of the arbitration proceeding is by the granting of injunctive relief"). *Roso–Lino*'s broad language removes any doubt that district court injunctions pending arbitration are available only when the contract expressly so provides. *See Erving*, 468 F.2d at 1066 n. 1; *see also Guiness–Harp Corp. v. Jos. Schlitz Brewing Co.*, 613 F.2d 468, 472–73 (2d Cir.1980) (contract requires maintenance of status quo until arbitration); *Connecticut Resources Recovery Auth. v. Occidental Petroleum Corp.*, 705 F.2d 31, 33–35 (2d Cir.1983) (same).

Courts of appeals elsewhere addressing the issue have endorsed a district court's power to issue an injunction pending arbitration. *See Teradyne, Inc. v. Mostek Corp.*, 797 F.2d 43, 47–51 (1st Cir.1986);

---

**2.** 9 U.S.C. § 4 provides, in pertinent part, that: A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdic-

tion under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement. * * *

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bradley,* 756 F.2d 1048, 1051–54 (4th Cir.1985); *Sauer–Getriebe KG v. White Hydraulics, Inc.,* 715 F.2d 348, 350–52 (7th Cir.1983), *cert. denied,* 464 U.S. 1070, 104 S.Ct. 976, 79 L.Ed.2d 214 (1984); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dutton,* 844 F.2d 726, 727–28 (10th Cir.1988). *But see Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Hovey,* 726 F.2d 1286, 1291–92 (8th Cir.1984); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Scott,* No. 83–1480 (10th Cir. May 12, 1983) (unpublished order).

Plaintiffs now ask us to reconsider our holding in *Roso–Lino* in light of the language of Section 4 of the FAA, and recent Supreme Court decisions, including several decided after *Roso–Lino,* evincing a policy preference in favor of arbitration. Plaintiffs also point to the Eighth Circuit's minority view in *Hovey,* based on arguments similar to those offered by plaintiffs here, that a district court errs in granting injunctive relief in an arbitrable controversy. But a decision of one circuit contrary to ours is not by itself compelling and, as discussed below, we are not persuaded by the arguments underlying it.

To begin with, we decline to retreat from *Roso–Lino* on the ground that our opinion there did not explicitly address the statutory language. Neither Section 4 nor any other section of the FAA precisely addresses the issue before us. The fact that the statute posits a situation where the district court would have jurisdiction in the absence of an agreement to arbitrate does not preclude us from holding that a court retains sufficient jurisdiction to issue an injunction pending arbitration when such an agreement is present.

The Supreme Court decisions cited by plaintiffs have held an increasing number of types of disputes to be arbitrable, *see, e.g., Shearson/American Express Inc. v.*

*McMahon,* 482 U.S. 220, 107 S.Ct. 2332 (Exchange Act and RICO claims); *Alberto–Culver Co.,* 417 U.S. 506, 94 S.Ct. 2449 (Exchange Act claims under international commercial contracts); *Prima Paint Corp.,* 388 U.S. 395, 87 S.Ct. 1801 (claim of fraud in inducement of entire contract), and have limited judicial discretion under the FAA when a dispute is subject to an arbitration agreement, *see, e.g., Dean Witter Reynolds v. Byrd,* 470 U.S. 213, 105 S.Ct. 1238 (courts must enforce arbitration agreements even where result is inefficient, bifurcated proceedings); *Moses H. Cone Memorial Hosp.,* 460 U.S. 1, 103 S.Ct. 927 (district court improperly stayed suit to compel arbitration pending resolution of state court action also involving issue of arbitrability). To be sure, they manifest a strong federal policy favoring arbitration of disputes. However, none of these decisions addresses the issue in this case—the power of a district court under the FAA to issue an injunction pending arbitration.[3]

Moreover, in our view, the pro-arbitration policies reflected in the foregoing Supreme Court decisions are furthered, not weakened, by a rule permitting a district court to preserve the meaningfulness of the arbitration through a preliminary injunction. Arbitration can become a "hollow formality" if parties are able to alter irreversibly the status quo before the arbitrators are able to render a decision in the dispute. *See Teradyne, Inc. v. Mostek Corp.,* 797 F.2d at 51; *Merrill Lynch v. Bradley,* 756 F.2d at 1053–54. A district court must ensure that the parties get what they bargained for—a meaningful arbitration of the dispute. As the Supreme Court has stated, "[t]he preeminent concern of Congress in passing the [Federal Arbitration] Act was to enforce private agreements into which · parties had entered." *Dean Witter Reynolds, Inc. v.*

---

**3.** Dicta in *Buffalo Forge Co. v. United Steelworkers,* 428 U.S. 397, 410–12, 96 S.Ct. 3141, 3148–50, 49 L.Ed.2d 1022 (1976), suggesting that a court's injunction pending arbitration could eviscerate an *agreement to arbitrate is inapposite* since that case involved application of the explicit anti-injunction provision of the Norris–LaGuar-

dia Act in a labor dispute. Indeed, the Supreme Court had earlier created an exception to the anti-injunction provision, found not applicable in *Buffalo Forge,* when an injunction was necessary to enforce an agreement to arbitrate. *Boys Markets, Inc. v. Retail Clerks Union,* 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970).

*Byrd,* 470 U.S. at 221, 105 S.Ct. at 1242. The issuance of an injunction to preserve the status quo pending arbitration fulfills the court's obligation under the FAA to enforce a valid agreement to arbitrate. *See Teradyne, Inc. v. Mostek Corp.,* 797 F.2d at 51; *Merrill Lynch v. Bradley,* 756 F.2d at 1054. *See also Boys Markets, Inc. v. Retail Clerks Union,* 398 U.S. 235, 251–54, 90 S.Ct. 1583, 1592–94, 26 L.Ed.2d 199 (1970) (cited in *Roso–Lino* ).

◼ As an alternative position, plaintiffs urge us to articulate a "rule of necessity" that would regulate a district court's power to issue injunctions pending arbitration. They argue that such injunctions should issue only after the movant has proved that the arbitrators are unable to provide the requested relief in a timely fashion. Such a rule, plaintiffs contend, would have foreclosed the injunction here because NYSE arbitrations are expeditious. They also argue that such a rule is not foreclosed by our prior cases, including *Roso–Lino,* because none involved arbitration before the NYSE. In effect they invite us to carve out a "NYSE exception" to the general rule permitting district court injunctions pending arbitration.

We decline this invitation as well. A new "rule of necessity" is unnecessary. At present, the parties are free to litigate the necessity of an injunction under traditional principles, and a district court may decline to issue one upon being satisfied that there is no point in doing so. Where an injunction has been issued and it turns out that prompt arbitration is available, the enjoined party is that much more able to have the injunction promptly reconsidered. In the usual case, where at the time the district court injunction is sought the parties are uncertain as to the promptness and efficacy of the arbitration, a "rule of necessity" would place an unwarranted burden on the movant who would have to litigate the necessity issue based largely on speculation.

In sum, because we conclude that neither the text of the FAA nor the policies underlying it warrant a departure from our holdings culminating in *Roso–Lino Beverage Distributors, Inc. v. Coca–Cola Bottling Co.,* we find that the district court had jurisdiction to issue the injunction pending arbitration.

## II.

◼ Our holding that the district court had jurisdiction to issue the preliminary injunction does not end our inquiry into the "wrongfulness" of the relief granted. The arbitrators later vacated the injunction, and the next question is whether this disposition of the controversy compels the conclusion that the preliminary injunction was "wrongful." We believe that it does.

◼ A party has been "wrongfully enjoined" under Fed.R.Civ.P. 65(c) if it is ultimately found that the enjoined party had at all times the right to do the enjoined act. *Medafrica Line, S.P.A. v. American West African Freight Conference,* 654 F.Supp. 155, 156 (S.D.N.Y.1987); *Factors Etc., Inc. v. Pro Arts, Inc.,* 562 F.Supp. 304, 308 (S.D.N.Y.1983); *Wainwright Securities Inc. v. Wall Street Transcript Corp.,* 80 F.R.D. 103, 107 (S.D.N.Y.1978). The conclusion that an injunction later dissolved was "wrongful," in the sense that the party had the right to do the enjoined act, does not necessarily imply that the district court abused its discretion in granting the relief in the first place. *See Wainwright Securities,* 80 F.R.D. at 107. "[A] temporary injunction may be wrongfully issued although the issuance may not have been improvident as an abusive exercise of the trial court's discretion." *Atomic Oil Co. v. Bardahl Oil Co.,* 419 F.2d 1097, 1099 (10th Cir.1969), *cert. denied,* 397 U.S. 1063, 90 S.Ct. 1500, 25 L.Ed.2d 685 (1970); *Wainwright Securities,* 80 F.R.D. at 107.

The focus of the "wrongfulness" inquiry is whether, in hindsight in light of the ultimate decision on the merits after a full hearing, the injunction should not have issued in the first instance. This conclusion is supported by the plain meaning of Rule 65(c) and the theory underlying it, that the applicant "consent[s] to liability up to the amount of the bond, as the price for [the injunction]." *Commerce Tankers Corp. v. National Maritime Union,* 553 F.2d 793,

800 (2d Cir.), *cert. denied*, 434 U.S. 923, 98 S.Ct. 400, 54 L.Ed.2d 280 (1977). The injunction bond is designed "to cover any damages that might result if it were later determined that [the applicant] was not entitled to an injunction." *Id. See Russell v. Farley*, 105 U.S. 433, 438–41, 26 L.Ed. 1060 (1882); *H.E. Fletcher Co. v. Rock of Ages Corp.*, 326 F.2d 13, 16–17 (2d Cir.1963) (injunction bond renders applicant "liable for damages if in the end it was determined that [the enjoined party] was within its rights in" engaging in enjoined conduct); *Rocky Mountain Timber Corp. v. Federal Insurance Co.*, 502 F.Supp. 433, 434–35 (D.Or.1980); Note, *Recovery for Wrongful Interlocutory Injunctions Under Rule 65(c)*, 99 Harv.L.Rev. 828, 836–42 (1986) (applicant should be liable only if injunction prohibited other party from doing what it was legally entitled to do). Put another way, the question is whether the plaintiffs "ought not to have been enjoined." *Russell v. Farley*, 105 U.S. at 439.

Under these standards, we find that plaintiffs were "wrongfully enjoined" by the district court. In light of the ultimate decision on the merits by the arbitrators, it turned out that Merrill Lynch was not entitled to the injunction it received and that Blumenthal and Fein had at all times the right to do business with their Merrill Lynch clients. The arbitrators "terminated in all respects" the preliminary injunctions preventing Blumenthal and Fein from doing business with the customers they serviced while at Merrill Lynch. The panel also ordered Merrill Lynch to return to each plaintiff "the copies of his customer records," which the district court had previously ordered turned over to Merrill Lynch. All this was done in the face of specific requests by Merrill Lynch to the arbitrators for the opposite result: a prohibition on plaintiffs' use of the "confidential" customer lists constituting "trade secrets," and the issuance of a one-year "blanket injunction" preventing plaintiffs from servicing these people.

The fact that the panel awarded Merrill Lynch damages of $80,000 against plaintiff Fein and did not award any damages to the plaintiffs does not compel a contrary conclusion. The heart of the controversy, for both plaintiffs and defendant, was plaintiffs' ability to carry on business with their alleged clients, not the assessment of damages. The crux of the relief sought by Merrill Lynch was an injunction against the plaintiffs to counter the potential harm to the firm from the former brokers' continued solicitation of their old customers. Merrill Lynch was squarely rebuffed by the arbitrators in this regard. The fact that the arbitrators chose to award Merrill Lynch monetary relief, for unspecified reasons, against one of the plaintiffs does not undermine the fact that plaintiffs were fully vindicated on the central issue in the case.

■ Merrill Lynch next argues that the plaintiffs unsuccessfully sought the relief they request now from the arbitrators and are thus barred by principles of *res judicata* and collateral estoppel from relitigating the issue. We are not persuaded. Before the arbitrators, plaintiffs sought damages against Merrill Lynch for its purported misconduct in seeking an injunction in federal court, in the face of NYSE rules and policies requiring claims to be submitted to arbitration, not for damages for lost business as a result of the improper issuance of the injunction.

■ Merrill Lynch also argues that under the doctrine of claim preclusion, when the arbitrators entered their final judgment on the merits of this controversy, that judgment became the full measure of relief to be accorded between the parties in this action, encompassing all matters that were or could have been raised. *See Commissioner of Internal Revenue v. Sunnen*, 333 U.S. 591, 597, 68 S.Ct. 715, 719, 92 L.Ed. 898 (1948); *Murphy v. Gallagher*, 761 F.2d 878, 879 (2d Cir.1985). Claim preclusion is easily rejected, however, because we are not obligated to give *res judicata* effect to an arbitration proceeding, especially where it is unclear whether the arbitrators here would have been able to grant relief against the injunction bond as sought by the plaintiffs in federal court. *See Coppinger v. Metro–North Commuter Rail-*

*road,* 861 F.2d 33, 38–39 (2d Cir.1988) (denying claim preclusive effect to an arbitration decision); *Benjamin v. Traffic Executive Ass'n Eastern Railroads,* 869 F.2d 107, 110–14 (2d Cir.1989) (endorsing *Coppinger* but granting collateral estoppel effect to an arbitration decision). *See also Dean Witter Reynolds, supra,* 470 U.S. at 222–23 (leaving open the issue of the preclusive effect of arbitration proceedings on nonarbitrable federal claims). A motion for wrongful injunction against a bond under Fed.R.Civ.P. 65(c) is a separate and distinct claim from the merits of the underlying controversy, and was not even available until after the arbitrators decided that Merrill Lynch was not entitled to injunctive relief. *See Medafrica Line, S.P.A.,* 654 F.Supp. at 156; *Wainwright Securities,* 80 F.R.D. at 106–07; *see also Atomic Oil,* 419 F.2d at 1101–02. Since the claim could not arise except upon a favorable ruling on the lack of merit to the movant's case, it is not barred by the doctrine of claim preclusion. *See Burmah Oil Tankers, Ltd. v. Trisun Tankers, Ltd.,* 687 F.Supp. 897, 901 n. 23 (S.D.N.Y.1988).[4]

Because we conclude that Blumenthal and Fein were wrongfully enjoined, a remand to the district court is necessary to determine damages recoverable against the bond. Plaintiffs are entitled to damages as may be shown to have been proximately caused by the injunction, *see Medafrica Line,* 654 F.Supp. at 156; *Factors Etc.,* 562 F.Supp. at 308, up to the amount of the bond. *See Philips Business Systems, Inc. v. Executive Communications Systems, Inc.,* 744 F.2d 287, 290 (2d Cir.1984); *Commerce Tankers,* 553 F.2d at 800.

## CONCLUSION

The judgment of the district court denying plaintiffs' motion to recover damages for wrongful injunction is reversed, and we remand the case to the district court for the determination of such damages as can be shown to have been proximately caused by the district court's injunction, up to the amount of the bond.

---

4. Merrill Lynch's argument that Blumenthal and Fein are barred from seeking damages for wrongful injunction because their "exclusive remedy to challenge any aspect of the arbitration award was by a motion to vacate pursuant to sections 10 and 12 of the FAA" is unavailing.

Plaintiffs are *not* challenging the arbitrators' award under the FAA, but are seeking compensation for damages, under the Federal Rules of Civil Procedure, caused by the wrongful injunction issued by the district court.