MERRILL LYNCH, PIERCE, FENNER & SMITH, INCORPORATED, a Delaware Corporation, Plaintiff–Appellee,

v.

Lawrence E. SALVANO and James B. Coon, Defendants–Appellants.

No. 92–3854.

United States Court of Appeals, Seventh Circuit.

Argued March 31, 1993.

Decided July 8, 1993.

**212**

Marsha Levick, Rubin & Associates, Pennsylvania, PA (argued), Peter A. Cantwell, Stephen F. Boulton, Peter A. Gaido, Cantwell & Cantwell, Chicago, IL, for plaintiff-appellee.

Ronald P. Kane (argued), Steven P. Gomberg, Michael A. Kraft, Diane C. Fischer, Siegan, Barbakoff & Gomberg, Chicago, IL, for defendants-appellants.

Before CUDAHY and MANION, Circuit Judges, and TIMBERS, Senior Circuit Judge.[*]

CUDAHY, Circuit Judge.

The defendants left the plaintiff's employ to work for a competitor, demanding that any disputes regarding client lists and solicitation be resolved in arbitration pursuant to an arbitration agreement. The New York Supreme Court compelled expedited arbitration and empaneled three arbitrators and arbitration commenced. Meanwhile, the plaintiff asserted claims against the defendants in this separate action for breach of contract and misappropriation, requesting an immediate temporary restraining order (TRO) to keep the defendants from soliciting clients or disclosing client information. The defendants appeal the initial order imposing a TRO as well as subsequent orders extending the TRO. For the reasons that follow, we affirm in part and reverse in part.

I.

On October 30, 1992, Lawrence Salvano and James Coon resigned from their employment as account executives for Merrill Lynch, Pierce, Fenner & Smith in Northbrook, Illinois, to join Prudential Securities, Inc., a competitor of Merrill Lynch. Both had executed early in their employment with Merrill Lynch a trainee agreement restricting post-employment solicitation of clients they serviced at Merrill Lynch and restricting their right to use and retain various documents pertaining to those clients. The agreements were to be governed by Illinois law. Salvano and Coon also executed a Uniform Application for Securities Registration or Transfers, known as a "Form U-4," agreeing to arbitrate "any dispute, claim or controversy that may arise between me and my firm ... that is required to be arbitrated under the rules, constitutions, or by-laws of the organization with which I register."

Upon leaving Merrill Lynch, Salvano and Coon demanded that Merrill Lynch assert any claims it believed it had against them in an arbitration proceeding before the New York Stock Exchange (NYSE). Merrill Lynch did not consent to expedite an arbitration proceeding. Salvano and Coon sought an order in the New York Supreme Court declaring the dispute arbitrable; they simultaneously commenced an arbitration before the NYSE seeking a declaration that none of their post-resignation solicitation of clients or use of client information constituted a breach of the trainee agreements. The New York court entered an order on November 6 compelling the parties to submit their disputes to expedited arbitration and, when Merrill Lynch did not cooperate, the court on November 10 ordered Merrill Lynch to litigate

[*] The Honorable William H. Timbers, Senior Judge for the United States Court of Appeals for the Second Circuit, is sitting by designation.

all issues before the NYSE panel of arbitrators. The NYSE that same day empaneled three arbitrators, who conducted a hearing over nine days between November 12 and December 7 on the issue of preliminary injunctive relief and ultimately denied Merrill Lynch's request for such relief.

During the course of these events, Merrill Lynch filed a complaint in United States District Court for the Northern District of Illinois against Salvano and Coon alleging breach of the training agreement, breach of fiduciary duty, conversion and misappropriation of trade secrets and unfair competition. Merrill Lynch also sought a temporary restraining order. On November 4, the district court, acknowledging that Salvano and Coon had commenced an arbitration proceeding and that they had filed an action in New York state court seeking to compel Merrill Lynch to submit to expedited arbitration, issued the TRO. The TRO required Salvano and Coon to return all records and enjoined them from using any information in those records and from soliciting business from any of their former clients at Merrill Lynch. A hearing was set for November 13 to determine whether a preliminary injunction would be granted and the case was assigned to Magistrate Judge Guzman.[1]

As proceedings in the New York state court and in the NYSE arbitration progressed, Salvano and Coon sought unsuccessfully on several occasions to have the TRO dissolved. On November 6, they filed an emergency motion to stay the proceedings and dissolve the TRO. They also refused to participate in evidentiary hearings in the district court regarding injunctive relief, contending that such matters were being handled in arbitration. At the November 13 hearing, the magistrate judge extended the TRO until November 24 and scheduled a status hearing for that date.[2] Meanwhile, the arbitration panel ruled that Salvano and Coon were permitted to solicit certain clients who had indicated in writing that they wished to maintain a business relationship with them. On November 24, the magistrate judge amended the TRO to conform with the arbitration panel's temporary relief, but extended the TRO "until the Arbitration Panel rules on preliminary injunctive relief subject to the possible redetermination by the court after reviewing the transcript and other evidentiary materials to be submitted by defendants." Order (Nov. 24, 1992). At the close of the arbitration panel's evidentiary hearings on December 7, the panel granted Salvano and Coon's request to lift any pending injunctions. The magistrate judge still refused to dissolve the TRO after subsequent requests on December 8 and December 15, but instead took the matter under advisement. On January 8, 1993, the New York Supreme Court granted Salvano and Coon's motion to confirm the arbitrators' award and denied Merrill Lynch's request for injunctive relief.

Salvano and Coon filed the present appeal on November 25, 1992, after the magistrate judge had extended the TRO for a second time. They also filed emergency motions to expedite the appeal and to suspend the TRO pending appeal. On January 28, 1993, this court denied Merrill Lynch's motion to dismiss the appeal and granted the defendants' emergency motion for an order suspending the TRO pending appeal.

## II.

This case requires us to decide whether the district court had the authority to grant a TRO in an arbitrable dispute, and if so, whether under the circumstances of this case the court erred in granting the TRO in the first instance or in subsequently extending it.

Salvano and Coon contend that the Federal Arbitration Act (FAA)—and the Illinois Arbitration Act, to the extent it applies—required the district court to deny the

---

1. This matter is a direct appeal from Magistrate Guzman's rulings. Each party consented to the reassignment of the case to the magistrate judge. *See* 28 U.S.C. § 636(c).

2. A TRO must expire within 10 days but can be extended for an additional 10 days if the party seeking an extension requests it before the first period has run and demonstrates good cause. Fed.R.Civ.P. 65(b). After 20 days an unappealable TRO becomes an appealable preliminary injunction.

TRO request.[3] We agree with Merrill Lynch, however, that the weight of federal appellate authority recognizes some equitable power on the part of the district court to issue preliminary injunctive relief in disputes that are ultimately to be resolved by an arbitration panel. *See, e.g., Sauer–Getriebe KG v. White Hydraulics, Inc.,* 715 F.2d 348, 351–52 (7th Cir.1983), *cert. denied,* 464 U.S. 1070, 104 S.Ct. 976, 79 L.Ed.2d 214 (1984); *Teradyne, Inc. v. Mostek Corp.,* 797 F.2d 43, 47–51 (1st Cir.1986); *Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 910 F.2d 1049, 1052–53 (2d Cir.1990); *Roso–Lino Beverage Distributors, Inc. v. Coca–Cola Bottling Co.,* 749 F.2d 124, 125 (2d Cir.1984); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bradley,* 756 F.2d 1048 (4th Cir.1985). *But see Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Hovey,* 726 F.2d 1286, 1291–92 (8th Cir.1984) (stating that a district court abused its discretion in granting injunctive relief in an arbitrable dispute). In *Sauer–Getriebe,* this court ordered the district court to enjoin the defendant's actions pending arbitration where the plaintiff satisfied the requisites for obtaining such relief under the four usual factors justifying injunctions. 715 F.2d at 351. That test examines whether the plaintiff will otherwise have an adequate remedy at law, whether the threatened injury to the plaintiff outweighs the threatened harm of the injunction, whether the plaintiff has at least a reasonable likelihood of success on the merits and whether the granting of a preliminary injunction will disserve the pub-

lic interest. *Wesley–Jessen Division of Schering Corp. v. Bausch & Lomb, Inc.,* 698 F.2d 862, 867 (7th Cir.1983). Though Salvano and Coon argue that *Sauer–Getriebe* is distinguishable from the present case on several grounds, the subsequent circuit cases reaching like results reinforce *Sauer–Getriebe*'s conclusion that district courts are not precluded as a general matter from issuing preliminary injunctive relief pending arbitration.

As the defendants point out, Supreme Court decisions over the course of several years indicate an increasingly favorable judicial attitude toward the arbitration of disputes. *See, e.g., Shearson/American Express Inc. v. McMahon,* 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987); *Scherk v. Alberto–Culver Co.,* 417 U.S. 506, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974); *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985). We agree with the Second Circuit's observation, however, that "the pro-arbitration policies reflected in [those cases] are furthered, not weakened, by a rule permitting a district court to preserve the meaningfulness of the arbitration" by granting injunctive relief.

◼ Having determined that the district court is not precluded from granting injunctive relief in cases involving arbitration agreements, we now consider whether the district court erred in granting the initial TRO in the specific circumstances before us.

---

**3.** Ample case law in this circuit and in others suggests that the FAA applies notwithstanding a choice of law clause such as the one included in the parties' employment agreement here. *See, e.g., Northern Illinois Gas Co. v. Airco Indus. Gases,* 676 F.2d 270, 274 (7th Cir.1982) (stating that despite an Illinois choice of law provision, "federal arbitration law governs the analysis of arbitration provisions in any contract evidencing a transaction in interstate commerce"); *Commonwealth Edison Co. v. Gulf Oil Corp.,* 541 F.2d 1263, 1269 (7th Cir.1976) (stating that permitting the parties "to contract away the application of the Act by adopting state law to govern their agreement would be inconsistent with the Act itself"); *Huber, Hunt & Nichols, Inc. v. Architectural Stone Co.,* 625 F.2d 22, 25 n. 8 (5th Cir. 1980). A more recent Supreme Court pronouncement, however, has indicated that the parties to an arbitration agreement may contract to apply the arbitration laws of a particular juris-

diction and that the FAA does not preempt state arbitration laws that are not in conflict with the goals and policies of the Act. *Volt Information Sciences, Inc. v. Board of Trustees,* 489 U.S. 468, 476–77, 109 S.Ct. 1248, 1254, 103 L.Ed.2d 488 (1989).

In the view of at least one court of appeals, whether a choice of law provision in an employment agreement controls as a general matter after *Volt* remains an open question. *Booth v. Hume Pub., Inc.,* 902 F.2d 925, 928–29 (11th Cir.1990). We discern no meaningful difference between Illinois and federal policy as to the propriety of injunctive relief; it is therefore unnecessary to resolve the matter in that regard. Because "federal and Illinois authorities are in accord in this field," *Northern Illinois Gas,* 676 F.2d at 274–75—and the defendants themselves admit that the FAA is consistent with Illinois law—we proceed under the assumption that the FAA applies.

Our review in this regard is deferential, and we examine the district court's balancing of the equities only for an abuse of discretion. *Brotherhood of Locomotive Engineers v. Missouri–Kansas–Texas Railroad Co.,* 363 U.S. 528, 535, 80 S.Ct. 1326, 1330, 4 L.Ed.2d 1379 (1960). Moreover, the district court's findings of fact will not be set aside unless clearly erroneous, although we examine conclusions of law *de novo.* Wright and Miller, *Federal Practice and Procedure* § 2962 at 633–36 (1973 and Supp.1993).

█ As to the district court's original decision, the available evidence—indicating that Salvano and Coon took various documents and information pertaining to Merrill Lynch's clients and used that information to solicit Merrill Lynch customers—sufficiently supports the court's determinations regarding irreparable harm and the inadequacy of Merrill Lynch's legal remedy. *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bradley,* 756 F.2d 1048, 1055 (4th Cir.1985) ("Merrill Lynch faced irreparable, noncompensable harm in the loss of its customers"); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Patinkin,* 1991 WL 83163 at *6, 1991 U.S.Dist. LEXIS 6210 at *16 (N.D.Ill. May 3, 1991) (noting that Merrill Lynch "suffers irreparable harm from the solicitation and loss of its clients, and that this is a harm for which there is no adequate legal remedy"). Moreover, although the defendants would likely suffer some harm during the pendency of the TRO, the court was warranted in determining that the denial of the TRO would inflict greater injury upon Merrill Lynch than the granting of the TRO would inflict upon the defendants. *See Patinkin,* at *6, 1991 U.S.Dist. LEXIS 6210 at *16 (stating that Merrill Lynch's potential harm "on several levels, is enormous"). The TRO served to maintain the status quo without prejudice to the merits of any of the parties' claims or defenses until an arbitration panel could consider the issues presented. *Blumenthal,* 910 F.2d at 1052–53 (noting that arbitration can become a "hollow formality" absent a court's ability "to preserve the meaningfulness of the arbitration"); *Teradyne,* 797 F.2d at 51; *Bradley,* 756 F.2d at 1053–54. We are unable to conclude that the district court abused its discretion in granting a TRO enjoining the defendants from soliciting any business from Merrill Lynch clients and from disclosing Merrill Lynch records.

█ The case law does not clearly resolve, however, the extent to which the district court's authority to grant injunctive relief extended beyond the initial November 4 TRO. Although we decline to follow the approach of the Eighth Circuit, which found a district court's grant of *any* injunctive relief in an arbitrable dispute to be an abuse of discretion, *see Hovey,* 726 F.2d at 1291–92, we do not go so far as to determine that that authority extends *ad infinitum.* A reasonable limitation is set forth in *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Patinkin,* 1991 WL 83163 at *4, 6, 1991 U.S.Dist. LEXIS 6210 at *13, 20 (N.D.Ill. May 3, 1991), a district court case with facts similar to the case before us. Although the court granted the plaintiff's request to extend a TRO that had been imposed earlier, it explicitly did so only "until the arbitration panel is able to address whether the TRO should remain in effect." *Id.* at *6, 1991 U.S.Dist. LEXIS 6210 at *20. Once assembled, an arbitration panel can enter whatever temporary injunctive relief it deems necessary to maintain the status quo.

Language in some of the other circuit decisions lends support to the *Patinkin* approach. For example, the Second Circuit's *Blumenthal* decision, which refused to carve out an exception that would limit courts' power to issue injunctions in NYSE cases where arbitrations are expeditious, nevertheless noted that "[w]here an injunction has been issued and it turns out that prompt arbitration is available, the enjoined party is that much more able to have the injunction promptly reconsidered." 910 F.2d at 1054. The logical implication of this observation is that courts are ill-advised to extend the injunction once arbitration proceeds.

In light of this analysis, one of the bases that Salvano and Coon set forth for distinguishing *Sauer–Getriebe* from the present case—that is, that no arbitration proceeding had been commenced at the time the *Sauer–Getriebe* action was initiated in federal dis-

trict court—takes on more appeal as we turn our review to the district court's subsequent extension of the TRO originally imposed on November 4. While in *Sauer–Getriebe,* the arbitration request was not filed until four months after the dispute arose, in the case before us, the arbitration proceeded almost immediately. The *Sauer–Getriebe* decision explicitly noted, moreover, that it would only consider whether an injunction was justified "[s]ince [the plaintiff] seeks only an injunction pending arbitration." 715 F.2d at 351.

On November 4, when the initial TRO was imposed, the defendants had demanded arbitration but the arbitration process had not yet commenced and therefore the panel was not poised to consider the necessity of any injunctive relief. By the time the court considered the extension of the TRO on November 13, however, three arbitrators were in place and the New York Supreme Court had ordered Merrill Lynch to litigate all issues—including the matter of preliminary injunctive relief—before that NYSE panel. At that point, under the reasoning of *Patinkin,* the extension of the TRO was improvident.

On the matter of the dispute's arbitrability, the New York court's decision obviates any need for independent assessment by this court. After Salvano and Coon sought an order in the New York Supreme Court declaring the dispute arbitrable, that court entered an order compelling the parties to submit their disputes to expedited arbitration and, when Merrill Lynch did not cooperate, ordered Merrill Lynch to litigate all issues before the NYSE panel of arbitrators. A recent Ninth Circuit case held that a California state order compelling arbitration was entitled to preclusive effect in federal court under the full faith and credit statute, 28 U.S.C. § 1738. *Southeast Resource Recovery Facility Auth. v. Montenay Int'l Corp.,* 973 F.2d 711, 714 (9th Cir.1992). Similarly, in the present case we can discern no reason to reexamine a matter already settled in the state proceeding.

Merrill Lynch devotes much of its brief to the merits of the proceeding in New York state court. In particular, Merrill Lynch argues that the New York court improperly compelled it to expedited arbitration in viola-

tion of the express provisions of the arbitration agreement. Merrill Lynch cites several district court cases in support of its view that a court cannot order the NYSE to expedite its proceedings when the governing contract does not provide for expedited arbitration. *See, e.g., Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Cunningham,* 736 F.Supp. 887, 889 (N.D.Ill.1990); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Tobias,* No. 90C–20210, Mem.Op. at 7–8 (N.D.Ill. July 26, 1990). Our task, however, is to determine the extent of the district court's discretion in granting and extending a TRO in this case, not to review the judgment of the New York Supreme Court.

### III.

For the foregoing reasons, we AFFIRM the district court's initial grant of a temporary restraining order on November 4 but REVERSE the subsequent orders extending it and REMAND with directions to vacate the injunction.