**MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., Plaintiff,**

v.

**David P. GRALL, Defendant.**

**David P. GRALL, Plaintiff,**

v.

**MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., Defendant.**

Nos. 1:93–CV–846, 1:93–CV–848.

United States District Court, W.D. Michigan, S.D.

Nov. 4, 1993.

John T. Sperla, John C. Stuive, Mika, Meyers, Beckett & Jones, Grand Rapids, MI, Thomas T. Loder, Rubin & Associates, Paoli, PA, for Merrill Lynch, Pierce, Fenner & Smith, Inc.

Alan R. Miller, David H. Jarvis, Alan R. Miller, PC, Birmingham, MI, for David P. Grall.

*OPINION*

BENJAMIN F. GIBSON, Chief Judge.

This is an action based upon an alleged breach of a non-competition agreement between Merrill Lynch, Pierce, Fenner & Smith, Inc. ("Merrill Lynch") and its former employee, David Grall. Pending before the Court is Merrill Lynch's motion for a temporary restraining order and preliminary injunction. The Court heard oral argument on Merrill Lynch's motion on October 27, 1993.

I.

Grall began working as a Merrill Lynch account executive in August 1988. On August 15, 1988, Grall signed a financial consultant trainee agreement, which provides in part:

1. All records of Merrill Lynch, including the names and addresses of its clients are and shall remain the property of Merrill Lynch at all times during my employment with Merrill Lynch and after termination of my employment for any reason with Merrill Lynch. None of such records, nor any part of them is to be removed by me from the premises of Merrill Lynch either in original form or in computerized, duplicated, or copied form except with the permission of an office manager for the purpose of conducting the business of Merrill Lynch and the names, addresses, and other facts in such records are not to be transmitted verbally, in writing, or in computerized form by me except in the ordinary course of conducting business for Merrill Lynch. All of said records or any part of them are the sole proprietary information of Merrill Lynch and shall be treated by me as confidential information of Merrill Lynch.

2. In the event of termination of my services with Merrill Lynch for any reason, I will (i) not solicit, for a period of one year from the date of termination of my employment, any of the clients of Merrill Lynch whom I served or other clients of Merrill Lynch whose names became known to me while in the employ of Merrill Lynch in the office of Merrill Lynch in which I was employed, and who reside within one hundred miles of the Merrill Lynch office in which I was employed, and (ii) *return any original records and purge or destroy any computerized, duplicated, or copied records referred to in paragraph 1 which have been removed from the premises of Merrill Lynch in any form. . . .*

. . . .

*I further consent to the issuance of a temporary restraining order or a preliminary or permanent injunction to prohibit the breach of any provision of this contract, or to maintain the status quo pending the outcome of any arbitration proceeding which may be initiated.*

Merrill Lynch's Verified Complaint, Exhibit A (emphasis in original).

On September 22, 1993, Grall signed a document which stated: "This is to certify that I have read and will comply with the pliance (sic) Outline for Financial Consultants." Merrill Lynch alleges that as a condition of his employment, Grall agreed in writing each year to abide by the compliance outline. The Compliance Outline for Merrill

Lynch, Pierce, Fenner & Smith, Inc. Financial Consultants provides in part:

Clients' accounts shall be handled in a highly confidential manner. You should not discuss the affairs of any client with anyone else. Client transactions should not be discussed among employees who are not concerned with the matter.

No information or records concerning the affairs of Merrill Lynch and/or its clients may be released except to persons legally entitled to receive such. This includes confidential information requested during routine regulatory visits. When in doubt, consult the Law & Compliance Division through your RVP/RM.

Merrill Lynch's Verified Complaint, Exhibit B.

Grall resigned his employment with Merrill Lynch on October 15, 1993. That day, he filed a complaint with the Kent County Circuit Court. In his complaint, Grall requests both a declaration that the financial consultant trainee agreement is unenforceable and an order staying the action and compelling expedited arbitration. Grall also has demanded arbitration by filing with the New York Stock Exchange, Inc. ("NYSE") a Statement of Claim dated October 15, 1993.

In response to Grall's state court action, on October 21, 1993, Merrill Lynch filed with this Court a verified complaint and a motion for a temporary restraining order and preliminary injunction. Later that day, Merrill Lynch removed Grall's action to this Court. On November 2, 1993, this Court entered an order consolidating the actions.

Merrill Lynch alleges that Grall has removed, retained, and copied original Merrill Lynch records, including documents, confidential information, and customer lists, and that Grall has disclosed and produced the confidential information and records to his new employer, PaineWebber, Inc. ("Paine-Webber"). Merrill Lynch further alleges that both Grall and PaineWebber have used the information to solicit Merrill Lynch's customers to do business with PaineWebber.

Grall does not dispute these allegations. Grall alleges in his complaint that before leaving Merrill Lynch he copied records re-garding clients and that he left the original documents at Merrill Lynch. Grall contends that the information does not constitute confidential information or trade secrets of Merrill Lynch. He asserts that before his resignation he did not solicit his clients to transfer their accounts to PaineWebber. Grall contends that he should not be prohibited from servicing the clients he serviced at Merrill Lynch and that the clients must be allowed to decide with whom to do business.

## II.

Grall first argues that the Court should stay this action pending arbitration and that the Court may not issue injunctive relief. Grall further asserts that the arbitrators have the power to issue injunctive relief.

█ The Sixth Circuit has not addressed whether a district court may issue injunctive relief in an arbitrable action and the federal courts are split on the issue. The Seventh Circuit recently discussed the split in the circuit courts and held that a district court has the authority to grant injunctive relief in an arbitrable dispute:

We agree with Merrill Lynch, however, that the weight of federal appellate authority recognizes some equitable power on the part of the district court to issue preliminary injunctive relief in disputes that are ultimately to be resolved by an arbitration panel.

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Salvano,* 999 F.2d 211, 214 (7th Cir.1993). The Seventh Circuit cited opinions from the Seventh, First, Second, and Fourth Circuits so holding, but noted that the Eighth Circuit has held that a district court abused its discretion in granting injunctive relief in an arbitrable action. *Id.* After examining the relevant case law, the Seventh Circuit held that "the district court is not precluded from granting injunctive relief in cases involving arbitration agreements." *Id.*

In *Salvano,* the Seventh Circuit further held that the district court's authority to issue injunctive relief extends only until the arbitrators can determine the temporary injunctive relief necessary to maintain the status quo:

The case law does not clearly resolve, however, the extent to which the district court's authority to grant injunctive relief extended beyond the initial November 4 TRO. Although we decline to follow the approach of the Eighth Circuit, which found a district court's grant of *any* injunctive relief in an arbitrable dispute to be an abuse of discretion, *see [Merrill Lynch, Pierce, Fenner & Smith, Inc. v.] Hovey*, 726 F.2d [1286] at 1291–92 [ (8th Cir. 1984) ], we do not go so far as to determine that that authority extends *ad infinitum.* A reasonable limitation is set forth in *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Patinkin*, 1991 WL 83163 at *4, 6, 1991 U.S.Dist. LEXIS 6210 at *13, 20 (N.D.Ill. May 3, 1991), a district court case with facts similar to the case before us. Although the court granted the plaintiff's request to extend a TRO that had been imposed earlier, it explicitly did so only "until the arbitration panel is able to address whether the TRO should remain in effect." *Id.* at *6, 1991 U.S.Dist. LEXIS 6210 at *20. Once assembled, an arbitration panel can enter whatever temporary injunctive relief it deems necessary to maintain the status quo.

. . . [C]ourts are ill-advised to extend the injunction once arbitration proceeds.

*Salvano*, 999 F.2d at 215.

■ Two district courts in this circuit have come to the same conclusion as the Seventh Circuit and the majority of other circuit courts which have addressed the issue. In *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Kramer*, 816 F.Supp. 1242 (N.D.Ohio 1992), the court found that a district court has the power to issue injunctive relief:

[T]he parties concede that the issue has not been presented to the Sixth Circuit. The plaintiff contends and the Court agrees that the great weight of circuit authority favors consideration of injunctive relief in this type of a controversy even though a motion for stay of proceedings pending arbitration has been filed.

. . . .

The Court is of the view that it should follow the weight of the authority.

*Kramer*, 816 F.Supp. at 1244–45. After further analysis, the court held "that Merrill Lynch is not foreclosed from seeking injunctive relief even though it concedes that the substantive issues raised by the Kramer departure are a subject for arbitration as demanded by Kramer." *Id.* at 1246 (footnote omitted).

Similarly, in *Compuserve, Inc. v. Vigny Int'l Finance Ltd.*, 760 F.Supp. 1273 (S.D.Ohio 1990), the court held that the district court may issue injunctive relief under the proper circumstances:

In reading the Arbitration Act, this Court is not of the opinion that the judiciary is forever precluded from enjoining the parties to maintain the statue quo pending arbitration. Nothing contained within 9 U.S.C. § 3 can be read to be that inclusive. However, this Court also is of the opinion that the proper test to be employed would be that of the preliminary injunctive standard which this Circuit utilizes. By Congress specifically not addressing this issue within the Act, this Court opines that the proper test for injunctive relief should be that which the particular Circuit has established.

*Vigny*, 760 F.Supp. at 1281.

The Court finds the reasoning of the *Salvano*, *Kramer*, and *Vigny* opinions persuasive. Under the weight of circuit court authority, this Court may issue injunctive relief if warranted under the facts of this action.

### III.

■ Merrill Lynch requests a temporary restraining order and preliminary injunction pursuant to Federal Rule of Civil Procedure 65. The purpose of a preliminary injunction is to preserve the status quo between the parties pending a final determination on the merits. *See University of Texas v. Camenisch*, 451 U.S. 390, 395, 101 S.Ct. 1830, 1834, 68 L.Ed.2d 175 (1981). A preliminary injunction, like all injunctions, is an equitable remedy which courts refuse to grant unless the right to relief is clear. *See Detroit Newspaper Publishers Ass'n v. Detroit Typographical Union No. 18*, 471 F.2d 872, 876 (6th Cir.1972), *cert. denied sub nom. Detroit Typographical Union No. 18 v. Detroit Newspaper Publishers Ass'n*, 411 U.S.

967, 93 S.Ct. 2149, 36 L.Ed.2d 687 (1973) (Injunction will not be awarded in doubtful cases or new ones not coming within well established principles).

■ The Sixth Circuit has held that the Court must consider the following four factors in determining whether to issue injunctive relief:

1) the likelihood of success on the merits;

2) the irreparable harm that could result if the injunction is not issued;

3) the impact on the public interest; and

4) the possibility of substantial harm to others.

*Basicomputer Corp. v. Scott,* 973 F.2d 507, 511 (6th Cir.1992); *see also In re DeLorean Motor Co.,* 755 F.2d 1223, 1228 (6th Cir. 1985); *Kramer,* 816 F.Supp. at 1246. These factors are not prerequisites to be met but must be balanced. *In re DeLorean,* 755 F.2d at 1229. The moving party must show a strong likelihood of success on the merits if all other factors militate against granting a preliminary injunction. Similarly, the moving party need show less likelihood of success on the merits if the other factors indicate that the Court should issue a preliminary injunction. *Id.*

■ The Court first examines Merrill Lynch's likelihood of success on the merits. *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Kramer, supra,* was an action by Merrill Lynch against a former employee. When the employee, Kramer, commenced his employment with Merrill Lynch, he signed an account executive trainee agreement which contains substantially similar provisions to those in paragraphs 1 and 2 of Grall's agreement with Merrill Lynch, quoted above. Kramer also annually agreed in writing to follow Merrill Lynch's compliance manual. Like Grall, Kramer resigned without notice and joined a competitor securities firm. *Kramer,* 816 F.Supp. at 1243. The court granted Merrill Lynch's motion for a preliminary injunction.

The court held that because the ultimate fact finders would be a panel of arbitrators, the court should determine whether evidence existed which would justify a remedy for Merrill Lynch, instead of determining likelihood of success on the merits. *Kramer,* 816 F.Supp. at 1247. The court held that such evidence existed:

> In this case, it is undisputed that Kramer negotiated an agreement with Kemper whereby he would be paid a higher percentage with respect to his commissions than at Merrill Lynch and that he was promised a "forgivable" loan of $72,000 as an additional inducement to join Kemper. It is also undisputed that Kramer produced for copying by Kemper all the necessary pertinent records concerning his customer base so that Kemper could promptly notify Kramer's customers of his switch in allegiance and solicit the appropriate transfer of Kramer's business to Kemper. It is also undisputed that such conduct violated Kramer's account executive trainee agreement with Merrill Lynch.
>
> Therefore the Court finds that there exist facts to be submitted to the arbitration panel that would justify a remedy on behalf of Merrill Lynch and thus the plaintiff has satisfied the first factor in support of its motion for injunctive relief.

*Kramer,* 816 F.Supp. at 1247 (footnote omitted).

The Court finds persuasive the *Kramer* court's holding. In the instant action, Merrill Lynch asserts and Grall does not deny that PaineWebber gave Grall a "forgivable loan" of $125,000 to $150,000, that PaineWebber has agreed to pay Grall higher commissions than he received at Merrill Lynch, that Grall copied client documents before he left Merrill Lynch, and that both Grall and PaineWebber have used the information contained in the documents to solicit the clients. The parties do not dispute that, if the arbitration panel upholds the financial consultant trainee agreement, this conduct constitutes a breach of the agreement. *See* Mich.Comp. Laws Ann. § 445.774a(1) (West 1989). Accordingly, the Court finds that evidence exists for presentation to the arbitration panel that would justify a remedy for Merrill Lynch.[1]

---

1. This opinion does not determine the merits or likelihood of success on the merits of this action.

■ The Court must next determine whether Merrill Lynch has demonstrated that it does not have an adequate remedy at law. When economic loss can be calculated and compensated by monetary damages, there is generally no claim for irreparable injury. *See Basicomputer*, 973 F.2d at 511. However, the Sixth Circuit has held that "an injury is not fully compensable by money damages if the nature of the plaintiff's loss would make damages difficult to calculate." *Basicomputer*, 973 F.2d at 511 (citation omitted).

In *Basicomputer*, the Sixth Circuit held that the loss of goodwill and fair competition often constitutes irreparable injury:

> The loss of customer goodwill often amounts to irreparable injury because the damages flowing from such losses are difficult to compute. *See Ferrero v. Associated Materials, Inc.*, 923 F.2d 1441, 1449 (11th Cir.1991). Similarly, the loss of fair competition that results from the breach of a non-competition covenant is likely to irreparably harm an employer. *See Overholt Crop Ins. Serv. Co. v. Travis*, 941 F.2d 1361, 1371 (8th Cir.1991) (holding that irreparable harm can be inferred from insurance sales representatives' breach of non-competition covenant).

*Basicomputer*, 973 F.2d at 512.

In *Basicomputer*, the defendants, five former employees of the plaintiff, had signed non-competition agreements with the plaintiff:

> Basic's standard employment contract contains a covenant not to compete.
>
> . . . .
>
> Each contract also contains a covenant not to disclose proprietary information, confidential information, or trade secrets, including the identity of customers and the prices at which Basic sells its goods and services. The contract bars an employee from removing any confidential information from the office except in the normal conduct of business.

Neither party nor any other person should present this Opinion to the arbitration panel. *See*

*Basicomputer*, 973 F.2d at 509. The Sixth Circuit held that the district court did not abuse its discretion in concluding that the plaintiff would suffer irreparable injury in the absence of a preliminary injunction and in issuing the injunction:

> The record contains ample evidence to support the court's findings that the defendants had access to confidential customer information at Basic, that they removed much of this information when they left Basic for Sears, and that they promptly began contacting Basic's customers after arriving at Sears. In addition, the defendants had access to Basic's pricing information and could use that information to underbid Basic.
>
> These facts are sufficient to support a finding that Basic would suffer competitive injury and loss of customer goodwill from the defendants' alleged breach of their covenants. Since competitive injuries and loss of goodwill are difficult to quantify, the court did not err in finding that Basic would suffer irreparable harm in the absence of an injunction.

*Basicomputer*, 973 F.2d at 512.

Similarly, the *Kramer* court held that Merrill Lynch had demonstrated irreparable injury under the facts of that action, because it was not possible to determine the number of clients who would be solicited in the future nor the amount of commissions they would generate and because disclosure of confidential information would result in a loss of trust and confidence in Merrill Lynch. *Kramer*, 816 F.Supp. at 1247; *see also Robert Half Int'l, Inc. v. Van Steenis*, 784 F.Supp. 1263, 1271–72 (E.D.Mich.1991) (held employer entitled to injunction where highly competitive nature of business made damages compensation impossible); *Chem–Trend Inc. v. McCarthy*, 780 F.Supp. 458, 461–62 (E.D.Mich.1991). The *Kramer* court further found convincing the plaintiff's argument that injunctive relief was necessary to deter employees and competitors firms from engaging in such action in the future. *Kramer*, 816 F.Supp. at 1247.

*Kramer*, 816 F.Supp. at 1247.

The Court finds that Merrill Lynch has demonstrated the irreparable harm which could result if the Court does not issue an injunction. Merrill Lynch has asserted facts which support its contention that it will suffer a loss of good will; client trust, confidence, and confidentiality; and competitive advantage if the Court does not issue a preliminary injunction. Merrill Lynch has also demonstrated that it will not be possible to determine the number of clients solicited nor the amount of commissions Grall generates in the future through the solicitation.

Third, the Court must determine the impact of a preliminary injunction upon the public interest. The Court finds persuasive the *Kramer* court's discussion. That court held that "the overriding public interest is the honoring and enforcement of noncompete agreements set forth in employment contracts providing the restriction in the agreements are reasonable." *Kramer*, 816 F.Supp. at 1248. Under Michigan law, noncompetition agreements are enforceable "only to the extent reasonably necessary to protect the employer's reasonable competitive business interests." *Robert Half Int'l*, 784 F.Supp. at 1273 (citing Mich.Comp.Laws Ann. § 445.774*s*(1)).

Grall's agreement provides a one year restriction regarding the customers he serviced at Merrill Lynch. The agreement does not prevent him from working as a stockbroker and it does not contain a geographical restriction. *Kramer*, 816 F.Supp. at 1248. The Court further finds that the granting of injunctive relief is not inconsistent with the public interest.

Finally, the Court must examine the possibility that injunctive relief will harm third parties. Grall has argued that a preliminary injunction would harm the clients he serviced at Merrill Lynch because it would deprive them of the opportunity of working with him for one year. The Court finds that the factors discussed above significantly outweigh the potential harm to the clients. *See Kramer*, 816 F.Supp. at 1248.

Accordingly, based upon the four factors discussed above, the Court finds that Merrill Lynch is entitled to the issuance of a preliminary injunction.

## IV.

For the foregoing reasons, the Court finds that it has the authority to issue injunctive relief in this action. The Court further finds that Merrill Lynch is entitled to a preliminary injunction. The Court will grant Merrill Lynch's motion for a temporary restraining order and preliminary injunction (pleading no. 3) and enter the following preliminary injunction:

Conditioned upon the posting of security in the sum of $100,000 to be posted no later than November 15, 1993, pursuant to Federal Rule of Civil Procedure 65, Grall is enjoined and restrained, directly or indirectly, and, whether acting alone or in concert with others, including any officer, agent, representative, and/or employee of Grall's current employer, PaineWebber, Inc., from:

1. Soliciting any business from any client of Merrill Lynch whom Grall served or whose name became known to Grall while in the employ of Merrill Lynch, including, without limitation, all individuals and entities referenced in Exhibit C to Merrill Lynch's complaint (excluding Grall's immediate family and clients residing over 100 miles from the Kalamazoo, Michigan, office of Merrill Lynch);

2. Using, disclosing, or transmitting information contained in the records of Merrill Lynch, including, but not limited to, the names, addresses, and financial information of clients referenced in Exhibit C to Merrill Lynch's complaint;

3. This Order is effective immediately and shall remain in full force and effect until the arbitration panel is able to address whether the preliminary injunction should remain in effect, or until December 15, 1993, whichever occurs first, or until further Order of the Court.

This is a matter that should be resolved by arbitration. Therefore, the Court urges the parties to seek prompt and expeditious arbitration of this dispute.