**Frank C. RUSCITTO, Plaintiff,**

v.

**MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., Defendant.**

**Civ. A. No. CA3–91–1312–D.**

United States District Court, N.D. Texas, Dallas Division.

Aug. 2, 1991.

Joe H. Staley, Jr., Elizabeth Lang–Miers and Margaret A. Donahue of Locke Purnell Rain Harrell, Dallas, Tex., for plaintiff.

David C. McCue and Blake L. Beckham of Holmes Millard & Duncan, Dallas, Tex., and Gregory S. Rubin, Thomas T. Loder and Christopher C. Coss of Rubin & Associates, Paoli, Pa., for defendant.

## MEMORANDUM OPINION

FITZWATER, District Judge.

Defendant Merrill Lynch, Pierce, Fenner & Smith, Inc. ("Merrill Lynch") applies for

a preliminary injunction precluding plaintiff Frank C. Ruscitto ("Ruscitto"), a former account executive employed by Merrill Lynch, from soliciting and accepting business from certain clients whom he served while a Merrill Lynch account executive and using, disclosing, or transmitting certain information contained in Merrill Lynch records. For the reasons that follow, *see* Fed.R.Civ.P. 65(d) and 52(a), the court grants the motion.

I

Plaintiff Ruscitto resigned from employment with defendant Merrill Lynch on July 3, 1991 and went to work immediately for a Merrill Lynch competitor, PaineWebber, Inc. ("PaineWebber"), On the day he resigned, he sent letters to customers whom he had served at Merrill Lynch, soliciting their brokerage business. *E.g.*, July 10, 1991 Affidavit of Wilbur R. Monier, Ex. A. The letter informed the customer that Ruscitto would "continue my business association with you through the brokerage firm PaineWebber." *Id.*

Ruscitto is a 47–year old resident of Dallas County, Texas. July 3, 1991 Affidavit of Frank C. Ruscitto at ¶ 3. He went to work for Merrill Lynch in August 1987 at its Las Colinas, Texas branch office. *Id.* at ¶ 4. Ruscitto had been a broker with EF-Hutton ("Hutton") from 1969–1974. July 22, 1991 Affidavit of Frank C. Ruscitto at ¶ 3. Thereafter, he was employed in the Trust Department of Mercantile National Bank ("Mercantile") for 13 years before commencing employment with Merrill Lynch. *Id.* at ¶¶ 3–4.

When Ruscitto commenced his employment with Merrill Lynch, he executed an Account Executive Trainee Agreement (the "Agreement").[1] Mem.Supp.Mot.Prel.Inj. Ex. A. The Agreement contains two provisions on which Merrill Lynch now relies in part for the preliminary injunction it seeks. The provisions state:

1. All records of Merrill Lynch, including the names and addresses of its clients, are and shall remain the property of Merrill Lynch at all times during my employment with Merrill Lynch and after termination of my employment for any reason with Merrill Lynch. None of said records nor any part of them is to be removed by me from the premises of Merrill Lynch either in original form or in duplicated or copied form, and the names, addresses, and other facts in such records are not to be transmitted verbally or in writing by me except in the ordinary course of conducting business for Merrill Lynch. All of said records or any part of them are the sole proprietary information of Merrill Lynch and shall be treated by me as confidential information of Merrill Lynch.

2. In the event of termination of my services with Merrill Lynch for any reason, I will not solicit, for a period of one year from the date of termination of my employment in any community or city served by the office of Merrill Lynch, or any subsidiary thereof, at which I was employed at any time, any of the clients of Merrill Lynch whom I served or whose names became known to me while in the employ of Merrill Lynch. In the event that any of the provisions contained in this paragraph and/or paragraph (1) above are violated I understand that I will be liable to Merrill Lynch for any damage caused thereby.

Merrill Lynch contends Ruscitto is violating ¶ 2 of the Agreement by soliciting 300–450 clients he serviced at Merrill Lynch,

---

1. In one of his affidavits in opposition to the preliminary injunction application, Ruscitto avers that "it is my strong belief that any such written agreement with Merrill Lynch was only for a two-year term, it expired by its own terms, and thus is no longer binding upon me." Ruscitto Aff. (July 3, 1991) at ¶ 4. This allegation does not present a controlling credibility question that requires an evidentiary hearing. Ruscitto neither questions the authenticity of the Agreement nor of his signature. The Agreement contains no provision that dictates the entire agreement expires after two years. Only ¶ 3—a clause irrelevant to Merrill Lynch's application—has a two-year term.

which represent over $28 million in assets managed by the defendant and $370,000 in commissions for Merrill Lynch in 1990. *See* July 8, 1991 Affidavit of Wilbur R. Monier at ¶ 4. Merrill Lynch argues Ruscitto is violating ¶ 1 of the Agreement by taking, using, and disseminating information concerning these customers, including their names, addresses, past investment activities, current status of their investments, and holdings. It seeks a preliminary injunction (1) precluding Ruscitto from soliciting business from certain clients of Merrill Lynch whom Ruscitto served while in Merrill Lynch's employ and from accepting business from any customers whom Ruscitto has solicited in the past for the purpose of doing business with Merrill Lynch and (2) preventing Ruscitto from using, disclosing, or transmitting information contained in certain records of Merrill Lynch.

Ruscitto opposes the application, arguing Merrill Lynch is not entitled to injunctive relief because the parties have entered into an agreement that compels them to arbitrate their dispute, Merrill Lynch cannot satisfy the elements required for entry of a preliminary injunction, Merrill Lynch has unclean hands, and a preliminary injunction will confer upon Merrill Lynch all the relief it seeks.

## II

### A

■ At the outset, the court turns to a procedural question. Because Ruscitto filed suit against Merrill Lynch in anticipation of relief he thought Merrill Lynch would pursue in court, Merrill Lynch is the defendant in this action. According to the clerk's office, as of today Merrill Lynch has yet to file a counterclaim against Ruscitto. As the court notes below, in the Fifth Circuit the first inquiry for determining entitlement to a preliminary injunction is whether the applicant has shown a likelihood of success on the merits. Indeed, Merrill Lynch predictably contends in its application "that there exists a substantial likelihood that Merrill Lynch will succeed on the merits of its claims against the Plaintiff." Mem.Supp.Mot.Prel.Inj. at 6–7.

But because Merrill Lynch has not filed a counterclaim, the question arises whether it procedurally has identified "its claims."

There is scant authority on the question, but the court is satisfied from its research that Merrill Lynch need not have filed a counterclaim. At least one circuit court has held there are circumstances of such an exigent nature that an injunction can precede even the filing of the suit itself. In *Studebaker Corp. v. Gittlin*, 360 F.2d 692 (2d Cir.1966), the Second Circuit affirmed an injunction entered by the district court on the basis of an affidavit and without a complaint. *Id.* at 694. The circuit court observed that "it would have been better to file a complaint along with the affidavit and order to show cause," *id.*, but under the circumstances (a complaint was filed after the hearing but before the injunction issued), the district court could properly treat the affidavit as a complaint. *Id.* Professors Wright and Miller state as the applicable rule that, "although it is preferable to file the complaint first, a preliminary injunction may be granted upon a motion made before a formal complaint is presented." 11 C. Wright & A. Miller, *Federal Practice and Procedure* § 2949 at 468 (1973).

In the present case Merrill Lynch's motion and associated briefing make pellucid the precise relief it seeks and the bases it contends warrant such relief. The lack of a counterclaim therefore presents no impediment. Merrill Lynch shall file its counterclaim promptly.

### B

■ A second preliminary question is more difficult. Ruscitto argues with some force that this court should not enter a preliminary injunction because the parties are obligated to arbitrate their dispute before the New York Stock Exchange ("NYSE"). He contends 9 U.S.C. § 3, which is part of the Federal Arbitration Act, mandates a stay of all proceedings until arbitration is completed or a party fails to arbitrate. He points to NYSE Arbitration R. 347, which also mandates arbitration in cases such as the present one, *see*

2 N.Y.S.E. Guide (CCH) ¶ 2347 (Sept. 1988), and to § 8(a) of the Code of Arbitration of the National Association of Securities Dealers Inc., which contains a similar provision.

The court recognizes there is a split of authority among the circuits that have decided the question whether 9 U.S.C. § 3 precludes entry of an injunction in a case where the underlying dispute is plainly covered by a mandatory arbitration agreement. The Fifth Circuit has not expressly addressed the question and even federal and state judges within Texas have reached conflicting results. The court is persuaded by its reading of the cases, and by Judge Feldman's thoughtful opinion in *Speedee Oil Change Sys., Inc. v. State Street Capital, Inc.*, 727 F.Supp. 289 (E.D.La.1989), that the Fifth Circuit will ultimately opt for the majority view and decide that a preliminary injunction can be entered to preserve the status quo during the process of arbitration. *See id.* at 292. Accordingly, the court holds that a preliminary injunction that does nothing more than preserve the status quo does not run afoul of 9 U.S.C. § 3.

### III

The court now turns to consideration of the merits of Merrill Lynch's application. The formulation of *Canal Auth. of State of Fla. v. Callaway*, 489 F.2d 567, 572 (5th Cir.1974), is familiar. In order to show entitlement to a preliminary injunction, Merrill Lynch must demonstrate (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable harm, (3) the threatened injury to Merrill Lynch outweighs the threatened harm to Ruscitto if injunctive relief is granted, and (4) granting the injunction will not disserve the public interest.

### A

To decide the question of likelihood of success, the court must first ascertain the controlling substantive law. Merrill Lynch argues the merits of its application on the

basis of numerous cases throughout the United States that have awarded it injunctive relief on a variety of grounds. Notwithstanding the numerical weight of the cases, most have no application here. As Ruscitto properly points out, the Agreement and applicable common law jurisprudence are governed by Texas choice of law rules, which apply Texas law to the instant facts. *See DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 679 (Tex.1990) (on rehearing), *cert. denied*, —— U.S. ——, 111 S.Ct. 755, 112 L.Ed.2d 775 (1991). The vast majority of the cases on which Merrill Lynch now relies do not apply Texas law. This is not a situation, then, where Merrill Lynch can simply point to the succession of courts that have already traveled a particular course and urge this court to do likewise.

In the late 1980s, the Texas courts turned a cold shoulder to enforcement of covenants not to compete. *See Property Tax Assocs., Inc. v. Staffeldt*, 800 S.W.2d 349, 351 (Tex.App.1990, writ denied) ("Since the *Hill [v. Mobile Auto Trim, Inc.*, 725 S.W.2d 168 (Tex.1987)] decision, those seeking to enforce covenants not to compete have not been very successful in [the Texas Supreme Court]"). But the Texas legislature changed this attitude with the enactment effective August 28, 1989 of Tex.Bus. & Comm.Code Ann. §§ 15.50 and 15.51 (Vernon Supp.1991). Under these standards, a covenant not to compete is enforceable to the extent (1) it is ancillary to an otherwise enforceable agreement[2] and (2) contains reasonable limitations as to the time, geographical area, and scope of activity to be restrained that do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee. *Id.* § 15.50. A court may award the promisee injunctive relief for a breach of the covenant. *Id.* § 15.51(a).

The applicability of § 15.50 to an agreement not to compete that was entered into before the statute was enacted was left undecided by the Texas Supreme Court in

---

**2.** If the covenant is executed on a date other than the date on which the underlying agreement is executed, the covenant must be sup-

ported by independent valuable consideration. *Id.* § 15.50(1).

*DeSantis.* *See* 793 S.W.2d at 685. But a Texas intermediate court held three weeks after *DeSantis* that the statute does apply if the *breach* of a covenant not to compete occurs after August 28, 1989. *See Webb v. Hartman Newspapers, Inc.*, 793 S.W.2d 302, 304 (Tex.App.1990, no writ); *accord Property Tax Assocs.*, 800 S.W.2d at 352 (applying statute to covenant executed January 5, 1988). The new law applies to today's case.

■ Under the statute, the court first determines if the covenant is ancillary to an otherwise enforceable agreement. In the present case the first test is met; the covenant was part of Ruscitto's agreement to become employed with Merrill Lynch.

"Once the first criteri[on] is met, the courts have no choice but to enforce the covenant if the promisee seeks reasonable enforcement." *Id.* at 350. The present record plainly shows that Merrill Lynch's request is reasonable. Ruscitto may continue to compete as a stock broker in the same locale. He is merely restricted for one year from soliciting clients whom he served or whose names became known to him while at Merrill Lynch. The duration of the covenant is plainly reasonable under Texas law, as is the prohibition upon use of records and customer information.

Merrill Lynch is likely to succeed on the merits of its claims.

## B

■ The court next considers the element of irreparable injury. Under Texas law, covenants not to compete present the paradigm of irreparable injury, so that reasonable enforcement appears to be the rule rather than the exception. Tex.Bus. & Comm.Code Ann. § 15.51(a) expressly makes available injunctive relief. The factual record supports a finding that Merrill Lynch is threatened with irreparable injury by Ruscitto's breach of the Agreement.

## C

■ The court determines next that the threat of injury to Merrill Lynch outweighs the threat of injury to Ruscitto. The court rejects the facile temptation simply to compare the corporate employer with the individual former employee and to balance the harm only with reference to their correlative financial standing. To do so would almost always dictate a ruling against the corporate behemoth. The proper equation is surely otherwise, balancing instead the terms and breadth of the injunction contemplated against the threatened harm if equitable relief does not issue.

Here, Ruscitto will be permitted to pursue his current profession and to compete with Merrill Lynch in the very community in which he has long-resided. Although the restrictions on him will be meaningful, the harm they exact does not outweigh what Merrill Lynch will incur in terms of lost customer goodwill, trade secrets, and lost business.

## D

The entry of a preliminary injunction will not disserve the public interest.

## IV

The court has carefully considered Ruscitto's clean hands argument as well as his contention that a preliminary injunction will accord Merrill Lynch all the relief it seeks. The court is not persuaded that either contention warrants denial of injunctive relief.

\*　　\*　　\*　　\*　　\*　　\*

The application for a preliminary injunction is granted for the reasons stated.