Linton WELLS and Linton Wells, II, Plaintiffs,

v.

MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., Defendant.

Civil Action No. 94–237.

United States District Court, E.D. Kentucky, Ashland Division.

Oct. 21, 1994.

---

Anita M. Britton, Lexington, KY, for Linton Wells, Linton Wells, II.

John I. Hanbury, Donna S. Colley, Ashland, KY, Gregory S. Rubin, Steven H. Doto, Paoli, PA, for Merrill Lynch, Pierce, Fenner, & Smith, Inc.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND PRELIMINARY INJUNCTION

WILHOIT, District Judge.

This matter is before the Court on the Defendant's Motion for a Preliminary Injunction pursuant to FRCP 65. The Plaintiffs, Linton Wells and Linton Wells, II are stockbrokers formerly employed by the Defendant, Merrill Lynch, Pierce, Fenner & Smith, Inc. ("Merrill Lynch"), a brokerage firm with an office in Ashland, Kentucky. The Plaintiffs voluntarily terminated their employment with Merrill Lynch and accepted employment with the Ashland, Kentucky office of Dean Witter Reynolds, Inc. ("Dean Witter"). Both Plaintiffs had employment contracts with Merrill Lynch containing non-solicitation and non-disclosure provisions.

The Plaintiffs filed this action on September 8, 1994, alleging that the non-solicitation provisions in their employment agreements with Merrill Lynch are unenforceable. The Plaintiffs requested an Order compelling the parties to submit their dispute over the non-solicitation and non-disclosure clauses to expedited arbitration before the New York Stock Exchange. Plaintiffs further requested that this Court enjoin and otherwise stay any action that might be brought by Merrill Lynch against the Plaintiffs to enforce the non-solicitation clauses.

On September 12, 1994, Merrill Lynch filed a Counterclaim, with a Motion for a Temporary Restraining Order enforcing the non-solicitation provisions in the Plaintiffs' employment agreements. A hearing was held in Lexington, Kentucky on September 12, 1994. On September 16, 1994, this Court entered an Order sustaining the Plaintiffs' Motion to compel expedited arbitration and directed the parties to submit their controversy to arbitration before the New York Stock Exchange. The Motion of Merrill Lynch for a Temporary Restraining Order was passed.

Merrill Lynch filed a Supplemental Motion for Immediate Injunctive Relief and Discovery. The Court sustained the Motion for Immediate Discovery and the parties conducted discovery depositions on October 3 and October 4, 1994. This matter was set for hearing on Merrill Lynch's Motion for Immediate Injunctive Relief in Ashland, Kentucky on October 11, 1994. A hearing was conducted, at which the Court received additional testimony and documentary evidence, as well as arguments of counsel. The parties agreed on the record to submit this matter to the Court for decision based upon the deposition testimony and the additional evidence presented at the hearing.

## FACTUAL BACKGROUND

### LINTON WELLS

Plaintiff, Linton Wells, began his employment with the Lexington office of Merrill Lynch in 1967. He remained employed in the Lexington office of Merrill Lynch until 1969, when he voluntarily terminated his employment with Merrill Lynch and went to work for Almstedt Brothers in Ashland, Kentucky.

Wells remained employed with Almstedt Brothers until he and the *entire office staff* of Almstedt Brothers "jumped ship" to join Merrill Lynch in its Huntington, West Virginia office on March 12, 1979. Upon joining Merrill Lynch, some clients Wells serviced at Almstedt Brothers transferred their accounts to Merrill Lynch.

When Wells joined Merrill Lynch in 1979, he signed an Account Executive Agreement that provides, in pertinent part:

In consideration of Merrill Lynch, Pierce, Fenner & Smith, Inc. and/or its affiliated companies (hereinafter referred to as Merrill Lynch) employing me in a sales capacity and in consideration of (a) the salary to be paid by Merrill Lynch, (b) for other good and valuable consideration, it is hereby agreed that:

1. *All records of Merrill Lynch,* including the names and addresses of its clients, are and shall remain the property of Merrill Lynch at all times during my employment with Merrill Lynch and after termination for any reason of my employment with Merrill Lynch, and that none of such records nor any part of them is to be removed from the premises of Merrill Lynch either in original form or in duplicated or copied form, and that the names, addresses and other facts in such records are not to be transmitted verbally except in the ordinary course of conducting business for Merrill Lynch. (Emphasis added).

2. In the event of termination of my services with Merrill Lynch for any reason, I will not *solicit* any of the clients of Merrill Lynch whom I served or whose names became known to me while in the employ of Merrill Lynch in any community or city served by the office of Merrill Lynch, or any subsidiary thereof, at which I was employed at any time for a period of one year from the date of termination of my employment.... (Emphasis added).

In 1990, the Plaintiff and four other individuals from Merrill Lynch's Huntington office were transferred to Ashland, Kentucky to establish a new office of Merrill Lynch.

### LINTON WELLS II

Plaintiff, Linton Wells, II, began his brokerage career in January of 1989, with Blinder Robinson, a regional brokerage firm in Lexington, Kentucky. After about six months, the Plaintiff left Blinder Robinson and was employed with RB Marich, another regional brokerage firm in Lexington, Kentucky. In February of 1990, Linton Wells, II was hired by Merrill Lynch in its Huntington, West Virginia office. He received two months of training while in the Huntington office and moved to the Ashland office in 1992. When Linton Wells, II joined Merrill Lynch in 1990, he signed a Financial Consultant Agreement that provides, in pertinent part, that:

In consideration of Merrill Lynch, Pierce, Fenner & Smith Incorporated (hereinafter referred to as Merrill Lynch) employing me in a sales capacity or for a sales position, and consideration of (a) the salary to be paid by Merrill Lynch, (b) the opportu-

nities which will be afforded me, (c) the support services and facilities provided to me, and (d) for other good and valuable consideration, it is hereby agreed that:

1. *All records of Merrill Lynch, including the names and addresses of its clients are and shall remain the property of Merrill Lynch* at all times during my employment with Merrill Lynch and after termination of my employment for any reason with Merrill Lynch. None of such records, nor any part of them is to be removed by me from the premises of Merrill Lynch either in original form or in computerized, duplicated, or copies form except with the permission of an office manager for the purpose of conducting the business of Merrill Lynch and the names, addresses, and other facts in such records are not to be transmitted verbally, in writing, or in computerized form by me except in the ordinary course of conducting proprietary information of Merrill Lynch and shall be treated by me as confidential information of Merrill Lynch. (Emphasis added).

2. In the event of termination of my services with Merrill Lynch for any reason, I will (i) not *solicit,* for a period of one year from the date of termination of my employment, any of the clients of Merrill Lynch whom I served or other clients of Merrill Lynch whose names became known to me while in the employ of Merrill Lynch in the office of Merrill Lynch in which I was employed, and who reside within one hundred miles of the Merrill Lynch office in which I was employed, and (ii) *return any original records and purge or destroy any computerized, duplicated, or copied records referred to in paragraph 1 which have been removed from the premises of Merrill Lynch in any form.* (Emphasis original). In the event that any of the provisions contained in this paragraph and/or paragraph 1 above are violated, I understand that I will be liable to Merrill Lynch for any damage and/or injury, including but not limited to reasonable attorney's fees, caused thereby and, in

the event that damages are an inadequate remedy, Merrill Lynch will be entitled to injunctive or other equitable relief. (Emphasis added).

3. ... I *further consent to the issuance of a temporary . restraining order or a preliminary or permanent injunction to prohibit the breach of any provision of this contract, or to maintain the status quo pending the outcome of any arbitration proceeding which may be initiated.* (Emphasis original).

After hours on September 6, 1994, Linton Wells and Linton Wells, II tendered letters of resignation from Merrill Lynch. On September 7, 1994, they accepted employment with Dean Witter.

The Defendant asserts that the Plaintiffs have violated and intend to continue to violate their respective employment agreements while in the employ of Dean Witter by soliciting Merrill Lynch customers and by maintaining and using a computer software program which contains a compilation of customer information including Merrill Lynch account information.

### AUTHORITY TO GRANT INJUNCTIVE RELIEF

Both parties agree that the merits of the underlying dispute are subject to arbitration according to the Constitution and Rules of the New York Stock Exchange. Therefore, the issue before the Court is whether a preliminary injunction may be issued to maintain the status quo pending arbitration.

█ Even if this matter is to be resolved by arbitration, a preliminary injunction may be granted by the Court to maintain the status quo pending arbitration. *Teradyne, Inc. v. Mostek Corp.,* 797 F.2d 43 (1st Cir. 1986); *Roso–Lino Beverage Distrib. v. Coca Cola Bottling Co.,* 749 F.2d 124 (2d Cir.1984); *Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 910 F.2d 1049 (2d Cir.1990); *Ortho Pharmaceutical Corp. v. Amgen, Inc.,* 887 F.2d 460 (3rd Cir.1989); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bradley,* 756 F.2d 1048 (4th Cir.1985); *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Salvano,* 999

F.2d 211 (7th Cir.1993); *P.M.S. Distrib. Co. v. Huber*, 863 F.2d 639 (9th Cir.1988); *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dutton*, 844 F.2d 726 (10th Cir.1988). *See also, Ruscitto v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 777 F.Supp. 1349 (N.D.Tex.), *aff'd.*, 948 F.2d 1286 (5th Cir. 1991), *cert. denied*, 504 U.S. 930, 112 S.Ct. 1994, 118 L.Ed.2d 590 (1992), and *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Hagerty*, 808 F.Supp. 1555 (S.D.Fla.1993), *aff'd.*, 2 F.3d 405 (11th Cir.1993).

These cases represent solid judicial precedent in support of this court's authority to impose injunctive restraints pending arbitration to prevent arbitration from being rendered a "hollow formality" and to preserve the "meaningfulness of the arbitration."

### INJUNCTIVE RELIEF

▮ Applying the test set forth in *In re DeLorean Motor Co.*, 755 F.2d 1223, 1228 (1985), four factors are important in determining whether a preliminary injunction is proper. Those factors are: (1) the likelihood of defendant's success on the merits; (2) whether the injunction will save the defendant from irreparable harm; (3) whether the injunction would harm the plaintiff; and (4) whether the public interest would be served by the injunction. As stated by the Sixth Circuit Court of Appeals, these four considerations are factors to be balanced, not prerequisites that must be met. The likelihood of success on the merits that needs to be shown will vary inversely with the degree of irreparable injury that the Defendant will suffer absent an injunction. *Id.* at 1229.

### A. LIKELIHOOD OF SUCCESS ON THE MERITS

The Plaintiffs plan to argue before the New York Stock Exchange arbitration panel that the non-solicitation portion of Linton Wells' employment agreement is unreasonable and/or vague. As to the employment agreement of Linton Wells II, the Plaintiffs intend to base their argument on a lack of consideration. The Defendants rebut these assertions by providing case law in which similar contracts have been held valid. *See, Calhoun v. Everman*, Ky., 242 S.W.2d 100 (1951); *Central Adjustment Bureau v. Ingram*, Ky.App., 622 S.W.2d 681 (1981); *Hall v. Willard and Wollsey, P.S.C.*, Ky., 471 S.W.2d 316 (1971); *Lareau v. O'Nan*, Ky., 355 S.W.2d 679 (1962); *Hammons v. Big Sandy Claims Service, Inc.*, Ky.App., 567 S.W.2d 313 (1978); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bradley*, 756 F.2d 1048 (4th Cir.1985); *Ruscitto v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 777 F.Supp. 1349 (N.D.Tex.), *aff'd.*, 948 F.2d 1286 (5th Cir.1991), *cert. denied*, 504 U.S. 930, 112 S.Ct. 1994, 118 L.Ed.2d 590 (1992); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Salvano*, 999 F.2d 211 (7th Cir.1993); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dutton*, 844 F.2d 726 (10th Cir.1988); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Hagerty*, 808 F.Supp. 1555 (S.D.Fla.1993), *aff'd.*, 2 F.3d 405 (11th Cir.1993); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Kramer*, 816 F.Supp. 1242 (N.D.Ohio 1992); and *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Patinkin*, 1991 WL 83163, 1991 U.S. Dist. LEXIS 6210 (N.D.Ill., May 3, 1991).

▮ The Court finds that Merrill Lynch has demonstrated a reasonable likelihood of success on the merits. To expound further on the merits of each of Plaintiffs' proposed arguments and the Defendant's corresponding counter-arguments would be to engage in the work of the New York Stock Exchange arbitration panel.

### B. IRREPARABLE HARM

The Court finds that, absent injunctive relief, it would be difficult to determine Merrill Lynch's damages with a reasonable degree of certainty. Although lost commissions could be ascertained for a specific account over a finite period, it would be difficult to decide which accounts transferred because of the solicitation or the amount of future commissions generated by those accounts. The testimony of James Layne was uncontradicted. He testified that Merrill Lynch loses more accounts when the non-solicitation/non-disclosure covenant is not enforced than it does when the agreement is enforced. However, it is impossible to determine how many more accounts will transfer because of the improper *solicitation*. Therefore, it is im-

possible to determine the loss of future commissions from these accounts. *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Salvano,* 999 F.2d 211, 214 (7th Cir.1993) (affirming the district court's finding of irreparable harm).

Wells admitted in his deposition that the transferred accounts will result in lost commission revenue to Merrill Lynch. (Wells dep., p. 59) More importantly, he agreed that it would be impossible to calculate the future commissions on those accounts which Merrill Lynch would lose. (Wells dep., pp. 59–60) Equally important, when Linton Wells was the Resident Manager of Merrill Lynch's Ashland office, he submitted two separate affidavits and verified two complaints in which he swore, under penalty of perjury, that conduct similar to the type he is currently accused of caused severe irreparable harm to Merrill lynch, including disclosure of trade secrets, loss of office stability, and incalculable and unascertainable financial loss. *See Merrill Lynch, Pierce, Fenner & Smith Inc. v. Gray,* No. 91–12 (E.D.Ky.1991); *Merrill Lynch Pierce, Fenner & Smith Inc. v. Totten,* No. 89–105 (E.D.Ky.1989).

The Sixth Circuit has also held that loss of customer good will and loss of fair competition (competitive losses) amounts to "irreparable injury because the damages flowing from such losses are difficult to compute ... [and] likely to irreparably harm an employer." *Basicomputer Corp. v. Scott,* 973 F.2d 507, 511–512 (6th Cir.1992). Consistent with that court's holding, other federal courts in this circuit have granted injunctive relief pending arbitration in similar cases because Merrill Lynch would suffer irreparable harm. *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Garrett,* No. 3–94–0761 (M.D.Tenn., September 2, 1994); *Orbach v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* No. 93–CV–75349–DT (E.D.Mich.1994); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Grall,* 836 F.Supp. 428, 434 (W.D.Mich.1993); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Tiano,* No. C–93–0116–L(M) (W.D.Ky.1993), *vacated and remanded as moot,* 25 F.3d 1049 (6th Cir.1994); *Johanneman v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* No.

92–517 (E.D.Ky.1992); *Merrill Lynch, Pierce, Fenner & Smith inc. v. Totten,* No. 89–105 (E.D.Ky.1989); *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Gray,* No. 91–12 (E.D.Ky.1991); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Tate,* No. 92–0685 (W.D.Ky.1992).

Although considered by the Court to be the weakest prong of Defendant's argument for injunctive relief, consistent with the authorities in this circuit and district, the Court concludes that Merrill Lynch faces potential irreparable harm, including the infliction of incalculable damages.

## C. HARDSHIP TO THE PLAINTIFF

The granting of injunctive relief would not cause undue hardship to the Plaintiffs. The contract does not prevent the Plaintiffs from engaging in the brokerage business, even with a competitor in the Ashland, Kentucky area. The contract merely prohibits the Plaintiffs from *soliciting* certain Merrill Lynch customers and from accepting business from any client they have already wrongfully *solicited.* The Plaintiffs are free to pursue any other potential customers including those customers Linton Wells can show accompanied his move to Merrill Lynch from a former brokerage house.

## D. THE PUBLIC INTEREST

In order for a preliminary injunction to issue, the benefit of injunctive relief to Merrill Lynch must outweigh any detriment to the Plaintiff and serve the public interest. Defendant maintains that this requirement is easily satisfied in that there are numerous brokerage firms and stockbrokers in the Ashland, Kentucky and Huntington, West Virginia area who are capable and willing to provide brokerage services needed by the public in the upcoming year. *See Central Adjustment Bureau v. Ingram.* However, Defendant overlooks the fact that individual brokers, over a course of dealing, gain the confidence and trust of their clients. There is little doubt but that the average securities consumer feels an allegiance to his particular stockbroker which overrides any allegiance to a specific brokerage house. Although it has been argued to this Court that, "the

clients are the only real assets of a brokerage firm," [1] The fact is that a brokerage firm is only as strong as those who broker its accounts.

By the Defendant's own account, Linton Wells II was a successful stockbroker who maintained a sizable client base generating over $400,000 in commissions for Merrill Lynch in 1993. The clients who looked to Mr. Wells as their stockbroker should not be denied his familiarity and expertise regarding their investments. It was conceded by Defendant at the hearing, in any inquiry a caller who contacts Merrill Lynch seeking to speak with either Linton Wells or Linton Wells, II is informed that he is "no longer employed with the company." Only upon further inquiry into his exact whereabouts is the caller informed that either stockbroker is employed by Dean Witter. The harm suffered by the public if Plaintiffs' former clients are deprived of their services is formidable.

### FINDINGS REGARDING NON-SOLICITATION PROVISIONS

The solicitation provisions contained in the Plaintiffs' employment agreements forbid each from "*soliciting*" Merrill Lynch clients in a certain geographical area and for a specified period of time. No definition of "solicit" is provided elsewhere in the contracts or in the New York Stock Exchange Rules of Arbitration. Webster's New Collegiate Dictionary provides the following definitions of "*solicit*":

1a: to make petition to: ENTREAT b: to approach with a request or plea 2: to strongly urge (as to one's cause) 3a: to entice or lure esp. into evil . . .

WEBSTER'S NEW COLLEGIATE DICTIONARY 1106 (1976).

■ Courts have had an opportunity to interpret the term "solicitation" in the context of the Securities Act of 1934, 15 U.S.C. § 78a *et seq.* A solicitation of corporate proxies does not include the mere contacting shareholders. *Calumet Industries, Inc. v. MacClure,* 464 F.Supp. 19, 32 (N.D.Ill.1978).

Further, a solicitation under the Act should not be broadly interpreted to cover any communication which may eventually influence the giving of proxies when they are actually requested. *Id.* In the same vein, this Court finds that a mere informational contact between the Wells and any former client does not constitute a "*solicitation*" under the employment agreements. An informational contact would consist of any written or oral contact that provides information about the Plaintiffs' whereabouts and how they may be contacted.

The Defendant asserts that clients of Merrill Lynch have been solicited by the Plaintiffs. Evidence produced through the deposition of Linton Wells leaves unclear exactly what type of contacts have been made or are intended in the future.

Mr. Hanbury: Do you intend to solicit people who did business with you at Merrill Lynch and request that they transfer all or part of their accounts from Merrill Lynch to Dean Witter?

Mr. Wells: That's possible.

Mr. Hanbury: Well, do you intend to do that or not?

Mr. Wells: To get them to transfer their accounts? No.

Mr. Hanbury: You intend to solicit them to do business with you—

Mr. Wells: That's correct.

Mr. Hanbury: And in your solicitation, do you intend to suggest to them, in any way, that they move their accounts from Merrill Lynch to Dean Witter?

Mr. Wells: Some yes and some no.

Mr. Hanbury: So to an extent, you intend to ask some of them to move their accounts; is that correct?

Mr. Wells: No, not necessarily.

Mr. Hanbury: So you're not going to ask any of them to move their account from Merrill Lynch to Dean Witter?

Mr. Wells: Some, yes.

1. *See Merrill Lynch, Pierce, Fenner & Smith, Inc.* *v. Gray,* No. 91–12 (E.D.Ky 1991).

Mr. Hanbury: And to the extent of that some, you intend to ask these people to move their account from Merrill Lynch to Dean Witter; is that correct?

Mr. Wells: Of those I ask, yes.

(Wells dep., pp. 47–48).

Mr. Hanbury: After September 6, 1994, have you contacted—either verbally or in written form or any electronic form— any person who you have serviced while at Merrill Lynch or whose name became known to you while at Merrill Lynch?

Mr. Wells: Yes.

Mr. Hanbury: What is the form of the contact?

Mr. Wells: Just calling them, letting them know where I was if they had a problem or question; give them a call and giving them my phone number.

(Mr. Wells goes on to explain that the most of the persons he has contacted are clients which came with him from Almstedt Brothers and the remainder are holders of accounts he serviced while at Merrill Lynch.)

Mr. Hanbury: Would you advise them that you had left Merrill Lynch?

Mr. Wells: Yes.

Mr. Hanbury: And would you advise them that you were now working with Dean Witter?

Mr. Wells: Yes.

Mr. Hanbury: Would you request them, either directly or indirectly to transfer their account to you at Dean Witter?

Mr. Wells: No.

(Wells dep., pp. 104–106).

It is not clear from this evidence if actual solicitation, as defined by this Court, has taken place. The Defendant has the burden of demonstrating that any contact is solicitous.

As to Merrill Lynch clients who have already transferred their accounts from Merrill Lynch to Dean Witter, the Defendant has provided documentation that approximately forty-six (46) such transactions have taken place. However, information has not been provided that each or any of these accounts have been transferred as a result of the Plaintiffs' *solicitous* activities. The burden will be on Defendant, Merrill Lynch, to prove wrongful solicitation has occurred as to these accounts. Consistent with this line of reasoning, only further transactions concerning those accounts shown to be wrongfully solicited from Merrill Lynch, as defined by this Court, are enjoined.

The Court further finds that Linton Wells should not be prevented from soliciting certain clients whom he had previously served during his employment with Almstedt Brothers. To do so, the Plaintiff must show that such customers were clients he served at Almstedt Brothers and that such customers transferred their accounts to Merrill Lynch because of their prior relationship with the Plaintiff. It shall be conclusively presumed that any customer who was served by Linton Wells during his employment with Almstedt Brothers and transferred their account to him within 30 days after he began his employment with Merrill Lynch did transfer because of the prior relationship with Linton Wells.

Finally, there will be no violation of the employment contracts for the purposes of the preliminary injunction, if any client testifies that it was his desire to have either Plaintiff manage his account and that he would not have kept his account at Merrill Lynch in any event.

## FINDINGS REGARDING NON-DISCLOSURE PROVISIONS

The Defendant objects to the maintenance and use of information the Plaintiffs have amassed while employed by Merrill Lynch using their own computer software. Litton Wells testified in his deposition that the majority of data contained on his computer program reflects either customers not served by Merrill Lynch or customers who were represented by Wells while employed by Almstedt Brothers. This information was compiled by the Plaintiffs on their own laptop computer. The files contained on the Plaintiffs' computer program are incompatible with the computer systems of both the Merrill Lynch and the Dean Witter offices. With this in mind, only use of the information to solicit Merrill Lynch customers, as defined by this Court,

will be enjoined. The computer information may be used for non-solicitous purposes or for purposes of soliciting clients shown to have been Mr. Wells clients at Almstedt Brothers.

## POSTING OF BOND

█ Merrill Lynch relays that Linton Wells generated over $400,000 in commissions for Merrill Lynch in 1993. However, the record fails to reflect what percentage of this amount was paid to Mr. Wells. Arbitration proceedings in this case can be expected to continue up to one year before a final decision is rendered by the New York Stock Exchange arbitration panel. The Court will require that the Defendant post a cash bond representing roughly twice the amount of commissions earned by Linton Wells in 1993. The Court's best estimate as to this amount is $300,000 and therefore such amount will be required.

## CONCLUSION

The Plaintiffs have been afforded all the relief they have requested by enforcement of the arbitration provisions of their contracts on an expedited basis. The Defendant has now been granted injunctive relief. There remain no other issues before the Court.

Accordingly,

**IT IS HEREBY ORDERED AND ADJUDGED:** that the Plaintiffs, Linton Wells and Linton Wells, II and all persons or entities in active concert or participation with them should be, and hereby are, restrained and enjoined, until this injunction is either modified or dissolved by this Court or by a ruling of an arbitration panel of the New York Stock Exchange, from directly or indirectly engaging in the following activities:

(a) *soliciting*, as defined by this Court in its Findings of Fact and Conclusions of Law, any business from any client of Merrill Lynch whom they served, or whose name became known to them while in the employ of Merrill Lynch;

i. as to Linton Wells, in any community or city served by a Merrill Lynch office at which he was employed, and from accepting any business of said customers whom Linton Wells has solicited in the past to do business with the Plaintiffs' present employer;

ii. as to Linton Wells, II, who reside within one hundred miles of the Merrill Lynch office in which he was employed and from accepting any business of said customers whom Linton Wells, II has solicited in the past to do business with the Plaintiffs' present employer;

(b) participating in any way in the servicing of these solicited clients by his new employer, including any referrals to other personnel of his new employer;

(c) aiding, abetting, encouraging or inducing any other persons to do any of the aforementioned acts;

(d) the Plaintiff, Linton Wells, shall be entitled to solicit clients whom he served while in the employ of Merrill Lynch and whom he had previously served at Almstedt Brothers. To do so, the Plaintiff must show that such customers were his clients at Almstedt Brothers and that such customers transferred their accounts to Merrill Lynch because of their prior relationship with the Plaintiff. It shall be conclusively presumed that any customer who was served by the Plaintiff, Linton Wells, during his employment with Almstedt Brothers and transferred their accounts to Linton Wells at Merrill Lynch within 30 days after the commencement of his employment at Merrill Lynch did transfer because of the prior relationship with Linton Wells;

(e) the Plaintiffs, Linton Wells and Linton Wells, II, shall be entitled to engage in any non-solicitous communications with clients they served while employed by Merrill Lynch;

(f) the Plaintiffs, Linton Wells and Linton Wells, II, shall be entitled to do business with any Merrill Lynch client who would testify that it is his desire to have either of the Plaintiffs manage his account and that he would not remain with Merrill Lynch in any event.

**IT IS FURTHER ORDERED** that the Defendant shall post bond, with surety, in the amount of $300,000 and said bond shall remain in effect until this injunction is dis-

solved by an Order of this Court or by a ruling of an arbitration panel of the New York Stock Exchange.

This is a final and appealable Order.

**IT IS SO ORDERED.**