**AMERICAN EXPRESS FINANCIAL ADVISORS, INC., Plaintiff,**

v.

**Jack G. SCOTT, Defendant.**

**Civil Action No. 3:96–CV–2700–P.**

United States District Court,
N.D. Texas,
Dallas Division.

Nov. 18, 1996.

Eric D. Brandfonbrener, Patrick T. Nash, Grippo & Elden, Chicago, IL, for Plaintiff.

Lyndon F. Bittle, Carrington Coleman Sloman & Blumenthal, Dallas, TX, for Defendant.

## ORDER RE: PRELIMINARY INJUNCTION

SOLIS, District Judge.

Before the Court are the following:

1. Verified Complaint for Temporary Restraining Order, Preliminary Injunction, Permanent Injunction, Damages and Other Relief;

2. Memorandum in Support of American Express' Motion for Immediate Injunctive Relief;

3. Defendant's Response to Application for Injunction;

4. Defendant's Brief in Opposition to Plaintiff's Application for Preliminary Injunction;

5. Defendant's Appendix of Arbitration Decisions Denying Securities Firms Injunctive Relief Against Financial Advisors; and

6. American Express Reply Memorandum in Further Support of its Preliminary Injunction Motion.

The Court finds that the Plaintiff's request for a preliminary injunction should be granted for the reasons set forth below.

## FACTS

Defendant, Jack G. Scott, worked as a financial advisor for Plaintiff, American Express Financial Advisors Inc. ("American Express"). In May of 1992 when Defendant formalized his affiliation with Plaintiff, Defendant entered into a contract with Plaintiff regarding their business relationship ("Contract"). The Contract set forth obligations on the part of both Plaintiff and Defendant. The Contract stated that Defendant was an independent contractor, not Plaintiff's employee. Prior to the date of the Contract, Plaintiff trained Defendant at Plaintiff's expense, and Plaintiff treated Defendant as its employee.

The Contract also addressed the parties' rights upon the termination of their affiliation. Regarding this issue, it provided that Defendant could not solicit Plaintiff's customers for one year in the territory in which he worked if he were to terminate his affiliation with Plaintiff or use any records and information about customers he served while affiliated with Plaintiff. The Defendant also agreed that the identity of customers and potential customers is confidential information, and that Defendant would not use any such information in connection with any business in competition with Plaintiff for one year after the Contract ended. The Contract also specified that Defendant agreed that Plaintiff was entitled to seek injunctive relief for any dispute arising from the Contract. If any such dispute were submitted to arbitration, the Contract provided that Plaintiff could seek injunctive relief from an appropriate court pending the outcome of the arbitration.

At the beginning of August of 1996, Plaintiff resigned from Plaintiff effective August 14, 1996. Defendant sent a letter dated August 12, 1996 on Plaintiff's letterhead to customers that he served while affiliated with Plaintiff which stated that he was changing his affiliation from Plaintiff to another brokerage group in order to provide better service. In other words, Defendant affiliated himself with Plaintiff's competitor immediately prior to his termination of his relationship with Plaintiff and solicited its customers.

In his complaint, Plaintiff alleges in Count 1 that Defendant violated the Lanham Act, 15 U.S.C. Section 1125(a), by misusing Plaintiff's name and marks. In Count 2, Plaintiff alleges that Defendant breached his Contract with Plaintiff by the following: (a) converting Plaintiff's records to his own personal benefit; (b) soliciting Plaintiff's customers for his own benefit; (c) encouraging Plaintiff's customers to transfer their business to him; and (d) using Plaintiff's phone number and name after severing his business relationship with Plaintiff. In Count 3, Plaintiff alleges that Defendant misappropriated its trade secrets. Plaintiff alleges that Defendant has converted its client records in Count 4. In Count 5, Plaintiff alleges that Defendant intentionally interfered with its business relationships. In Count 6, Plaintiff alleges that Defendant breached his fiduciary duty to Plaintiff by, among other things, soliciting and diverting

its clients to his own venture and by converting its confidential and trade secret information to his own use.

## ANALYSIS

### A. Factors Considered for Preliminary Injunction

In ruling on a motion for preliminary injunction, the Court must consider whether: (1) there is a substantial likelihood of success on the merits; (2) there is a substantial threat of irreparable injury if the injunction is not granted; (3) the threatened injury to the plaintiff outweighs the threatened injury to the defendant; and (4) granting of the preliminary injunction serves the public interest. *Cherokee Pump & Equip. Inc. v. Aurora Pump*, 38 F.3d 246, 249 (5th Cir. 1994).

### B. Likelihood of Success on the Merits of Breach of Contract Claim in Count 2

■ The Court finds that Plaintiff has a substantial likelihood of success on the merits of its breach of contract claim in Count 2. Plaintiff alleges that Defendant solicited Plaintiff's clients in his August 12th letter for his own venture with Securities America, Inc, which is a clear breach of the Contract. Plaintiff alleges that Defendant is still in possession of Plaintiff's records of customer names, addresses, investment characteristics, etc. and is using that information to solicit and serve Plaintiff's customers, all in breach of the Contract. In response, Defendant argues that the Contract is unenforceable, and thus Plaintiff cannot succeed on its breach of contract claim.

■ The enforceability of the non-compete agreement is a question of law for the Court. *Light v. Centel Cellular Co.*, 883 S.W.2d 642, 643 (Tex.1994).[1] Section 15.50 of the Texas Business and Commerce Code governs the enforceability of the Contract. This section states:

> Notwithstanding Section 15.05 [which generally declares restraints on competition unlawful] of this code, a covenant not to compete is enforceable if it is ancillary to or part of an otherwise enforceable agreement at the time the agreement is made to the extent that it contains limitations as to time, geographical area, and scope of activity to be restrained that are reasonable and do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee. Tex. Bus. & Comm.Code Section 15.50 (Vernon Supp.1994).

This section applies in the instant case because the alleged breach of the non-compete covenant occurred after August 28, 1989. *Ruscitto v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.,* 777 F.Supp. 1349, 1354 (N.D.Tex.), *aff'd,* 948 F.2d 1286 (5th Cir. 1991), *cert. denied,* 504 U.S. 930, 112 S.Ct. 1994, 118 L.Ed.2d 590 (1992).

■ The threshold issue for enforceability of a non-compete covenant is whether (1) there is an otherwise enforceable agreement and (2) the covenant restricting competition is ancillary to that agreement. *Light.* Then the Court must examine whether the limitations on competition imposed by the non-compete covenant are reasonable and no more restrictive than necessary.

■ The first inquiry under *Light* is whether there was an otherwise enforceable agreement other than the non-compete agreement. *Light,* 883 S.W.2d at 645. Defendant argues that the at-will employment Contract provided Plaintiff with the ability to terminate its relationship with Defendant

---

1. The Contract provided that Minnesota law would apply to any disputes between the parties. Defendant cited the case of *DeSantis v. Wackenhut Corp.,* 793 S.W.2d 670, 677–79 (Tex.1990), in a footnote, in support of application of Texas law to this dispute while Plaintiff cited Texas and Minnesota law. Neither party has fully briefed the issue of choice of law. Because choice of Minnesota or Texas law does not appear to be outcome determinative, this Court will apply Texas law in ruling on the motion for preliminary injunction.

Defendant's argument that the "rules and practices of the securities industry" apply to and govern this lawsuit is inapposite. The possibility that this dispute could finally be determined on the merits by a board of arbitrators does not dictate a possible change of law. Arbitrators must apply the law and not rules of their own making. *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 26, 111 S.Ct. 1647, 1652, 114 L.Ed.2d 26 (1991).

without cause while Defendant was forced to make all of the promises.[2] Defendant argues that any purported promises made by Plaintiff under the agreement are illusory. The Court finds that both Plaintiff and Defendant obligated themselves to perform many obligations under the Contract. Plaintiff incurred large expenses in establishing years of goodwill for the American Express name and trade marks which Plaintiff allowed Defendant to use pursuant to the parties' Contract. Plaintiff's established name gave Defendant credibility that he would not otherwise have enjoyed as an engineer who was beginning a new career as a financial planner. Plaintiff provided lengthy and expensive training to Defendant who apparently had no prior knowledge of the securities or financial planning business. Plaintiff provided a substantial customer base of one hundred and twenty referrals to Defendant upon Defendant's affiliation with Plaintiff. The extensive training and customer base provided to Defendant by Plaintiff was part and parcel of the parties' agreement pursuant to the Contract.

After termination of the Contract, Defendant in turn promised not to solicit Plaintiff's clients and not to use Plaintiff's confidential information for one year. Upon termination of their business relationship, Defendant also promised to return Plaintiff's files, change his telephone number and cease using Plaintiff's name. Both sides had the right to terminate the Contract without cause with fifteen days notice. The Court finds that Plaintiff's promises were not illusory and an otherwise enforceable agreement existed between Plaintiff and Defendant.

■ The second inquiry under *Light* is whether the non-compete agreement is ancillary to the otherwise enforceable agreement. In order for a non-compete covenant to be ancillary to an otherwise enforceable agreement between employer and employee (1) the consideration given by the employer in the otherwise enforceable agreement must give rise to the employer's interest in restraining the employee from competing; and (2) the covenant must be designed to enforce the employee's consideration or return promise in the otherwise enforceable agreement. *Light*, 883 S.W.2d at 647.

The Court finds that the non-compete covenant is ancillary to the otherwise enforceable Contract. The training, confidential information and trade secrets given by Plaintiff to Defendant gave rise to Plaintiff's interest in restraining Defendant from competing. The non-compete covenant, in turn, enforces Defendant's return promise not to use or disclose the confidential information and trade secrets in the context of the otherwise enforceable Contract. *Light*, 883 S.W.2d 642, 647 n. 14, 15.

■ Finally, the Court must examine whether the non-compete covenant contains limitations as to time, geographical area, and scope of activity to be restrained that are reasonable and do not impose a greater restraint than is necessary to protect Plaintiff's good will and other business interests pursuant to Tex. Bus. & Comm.Code Section 15.50. The covenant at issue specifies a one year duration and limits Defendant from contacting customers that he served while he was affiliated with Plaintiff. The Contract states that Defendant may not solicit Plaintiff's customers for the specified one year period in the "territory" in which Defendant worked; thus, it contained no express geographic limitation. However, the substance of the Contract makes clear that Defendant may sell his financial planning services anywhere he chooses upon termination of their business relationship, just not to the customers that he served while affiliated with Plaintiff or potential customers, as explained below.

Further, the language of the Contract limits the clients and potential clients who are covered by the restriction. The parties' Contract defines "Client" as any person or entity who holds Plaintiff's products, to whom Plaintiff's representative has made a presentation or any person who is a member of a client's household. Section IV, 1, (e) of the

---

**2.** The fact that Defendant was an independent contractor, not an employee of Plaintiff, has no bearing on the enforceability of the Contract. *Keystone Life Ins. Co. v. Marketing Management.*

*Inc.* 687 S.W.2d 89 (Tex.App.1985) (upholding injunction to prevent independent contractor from soliciting clients by using misappropriated client information).

Contract states that Defendant is obligated not to reveal any information about potential clients to whom a presentation has been made by Plaintiff's representative, who might reasonably be expected to do business with American Express. This language shows that the **potential** clients are people to whom an American Express sales presentation has been made. The scope of the restrictive covenant is reasonable because it covers only those persons who have bought Plaintiff's products, people to whom a sales presentation has been given, or members of their household. Accordingly, the Court finds that the restrictions imposed by the non-compete covenant are reasonable. *IDS, Inc. v. McElroy*, 645 S.W.2d 338, 339 (Tex.App.—1982) (court found same restrictions on competition as in the instant case reasonable).

Further, the non-compete covenant does not impose a greater restraint than necessary to protect Plaintiff's business interests. Enforcing the non-compete covenant via the requested relief is necessary to stop Defendant's misappropriation and use of Plaintiff's confidential information and trade secrets in competition against Plaintiff. In summary, the Contract is enforceable, and the non-competition covenant is ancillary to the Contract, limited in scope and no broader than necessary to protect Plaintiff's interests. Accordingly, the Court finds that Plaintiff has a substantial likelihood of prevailing on its breach of contract claim in Count 2 based on the facts in the pleadings.[3]

**C. Irreparable Injury to Plaintiff Without Injunctive Relief**

██ In Texas, injury resulting from the breach of non-compete covenants is the epitome of irreparable injury. *Ruscitto*. In a situation where trade secrets and goodwill are involved, the threat is significant that the harm experienced by the misappropriation or misuse of trade secrets will be irreparable, *IDS Financial Services Inc. v. Smithson*, 843 F.Supp. 415, 418 (N.D.Ill.1994), and damages are impossible to calculate. *Merrill, Lynch, Pierce, Fenner & Smith, Inc. v. Stidham*, 658 F.2d 1098, 1102 n. 8 (5th Cir.1981).

The Court is not persuaded by Defendant's arguments that Plaintiff's damages can be measured and finds that Plaintiff will suffer irreparable injury without injunctive relief.

**D. Threatened Injury to Plaintiff Outweighs Threatened Injury to Defendant**

██ While Defendant's new business venture will certainly be hurt by his inability to work for customers whom he serviced while he was affiliated with Plaintiff and people to whom a representative of Plaintiff has made a sales presentation, this restriction will last only one year from August 14, 1996, less than nine months from the present date. Defendant is not restricted from earning a living by selling any other financial services products to anyone else in any other location. Although this restriction on Defendant's activities will be meaningful and painful, the harm to Defendant does not outweigh the harm to Plaintiff in terms of lost customer goodwill and business. *Ruscitto*, 777 F.Supp. at 1354.

**E. Granting Preliminary Injunction Serves Public Interest**

██ It is true that some of the clients that Defendant served while he was affiliated with Plaintiff may choose to have Plaintiff continue to serve them. Certainly this Court has no jurisdiction over these individuals who are not parties to this lawsuit and cannot direct their choice as to an investment advisor. *Bethell v. Peace*, 441 F.2d 495, 498–99 (5th Cir.1971) (court had no jurisdiction over co-owners of property which was subject of dispute where co-owners were not parties); Fed.R.Civ.P. 65(d). However, this Court does have jurisdiction over the dispute between Plaintiff and Defendant and has the ability to grant the requested injunctive relief limiting Defendant's activities in order to both preserve the Plaintiff's rights and to protect the public interest.

Defendant argues that Plaintiff does not have clean hands because Plaintiff contacted its clients and tried to stop Defendant from soliciting them. Defendant suffers from a

---

**3.** Although the Plaintiff may also prevail on the merits of Counts 1 and 2–6, there is no need for the Court to address these Counts as the Court finds for purposes of the Plaintiff's request for injunctive relief that Plaintiff is likely to prevail on Count 2.

lack of clean hands, not Plaintiff. The evidence suggests that Defendant breached the Contract by soliciting Plaintiff's customers for his new venture and doing so before he terminated his relationship with Plaintiff in mid-August. Defendant breached the Contract with Plaintiff and made deliberate misrepresentations about his affiliations with Plaintiff and his new venture on Plaintiff's own letterhead. Preventing Defendant from profiting from this sort of deliberate misrepresentation by granting the preliminary injunction certainly serves the public interest.

**F. Court's Power to Issue Injunctive Relief Despite Arbitration Clause**

■ This Court has the right to issue preliminary injunctive relief pending arbitration even though either Plaintiff or Defendant may later request arbitration. *Merrill, Lynch, Pierce, Fenner & Smith, Inc. v. Salvano,* 999 F.2d 211, 214 (7th Cir.1993); *First Options of Chicago v. Kaplan,* 514 U.S. 938, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995) (the only disputes which may be decided by arbitration are those the parties have agreed to submit to arbitration). Here, Defendant specifically agreed in the Contract that Plaintiff could seek injunctive relief even if a dispute were later submitted to arbitration.

### CONCLUSION

The Court finds as follows:

1. Plaintiff has demonstrated a likelihood of prevailing on the merits of Count 2;

2. Plaintiff will suffer irreparable harm and loss without injunctive relief;

3. Greater injury will be incurred by Plaintiff if injunctive relief is denied than will be incurred by Defendant if injunctive relief is granted; and

4. The public interest will be served by this Court's granting the injunctive relief.

Accordingly, it is hereby ORDERED that Defendant is hereby restrained and enjoined from the following:

a) further soliciting any business from any client whom Defendant served while Defendant was affiliated with Plaintiff;

b) using any telephone number which Defendant used while he represented Plaintiff and which has been listed in any telephone directory using Plaintiff's name or trade marks;

c) making further misrepresentations regarding Defendant's affiliation with Plaintiff and from further misappropriating Plaintiff's name and marks;

d) revealing or disclosing in any manner information contained in Plaintiff's records, including the names, addresses, or any financial information of any client of Plaintiff whom Defendant served or any person to whom American Express has made a sales presentation or members of their households, and directing Defendant to return to Plaintiff all such records in his custody or control; and

e) further offering for sale, selling or seeking an application for any securities, insurance product or financial services product to or from any client whom Defendant served while affiliated with Plaintiff, to whom American Express has made a sales presentation or members of their households.

It is FURTHER ORDERED that Defendant is directed to arrange for the appropriate telephone company to have all telephone calls placed to 817–444–9898 transferred or referred to 817–428–9898, not 817–444–6878 or any other number.

It is FURTHER ORDERED that Defendant is directed to segregate all receipts received from and maintain separate accounts for all services performed for and products sold to any person who is or was one of Plaintiff's clients whom Defendant served while he was affiliated with Plaintiff, to whom American Express has made a sales presentation or members of their households.

It is FURTHER ORDERED that bond set on the temporary restraining order in this matter continues in full force and effect until further order of this Court at the previously set amount of $10,000 posted on October 8, 1996 pursuant to Fed.R.Civ.P. 65(c) for purposes of this Order re: Preliminary Injunction.

It is FURTHER ORDERED that this Order shall remain in full force and effect until further order of this Court.